**Gustavo Julian GARCIA, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 71417.

Court of Criminal Appeals of Texas,
En Banc.

Dec. 21, 1994.

Opinion after Grant of Rehearing
March 27, 1996.

Michael L. Strasser, Wylie, for appellant.

Tom O'Connell, Dist. Atty., and Randall A. Blake, Mark J. Rusch and David Waddill, Asst. Dist. Atty's, McKinney, Robert Huttash, State's Atty., Austin, for State.

## OPINION

PER CURIAM.

Appellant was convicted of capital murder. Tex.Penal Code Ann. § 19.03(a)(2). The jury affirmatively answered the statutory punishment issues and the trial judge sentenced appellant to death. Tex.Code Crim.Proc. Ann. arts. 37.071, § 2(b) and (e). Appeal to this Court is automatic. *Id.* at (h). Appellant raises seventy points of error, including challenges to the sufficiency of the evidence at both the guilt/innocence and the punishment stages of trial. However, because we sustain point of error forty-two, we address only this point of error as well as appellant's challenges to the sufficiency of the evidence.

### I.

### SUFFICIENCY OF THE EVIDENCE AT GUILT/INNOCENCE

The evidence at trial established that on December 9, 1990, appellant and his co-defendant, Christopher Vargas, entered a liquor store in Plano. Appellant was armed with a single shot, twenty gauge, sawed-off shotgun and carried extra ammunition. Appellant ordered the store clerk to retrieve the money from the cash register while Vargas took beer to their car.

Appellant ordered the clerk into a small room and on his knees. Appellant then shot the clerk in the abdomen. The clerk managed to get to his feet, threw a chair at appellant and escaped, running around the building and over a fence. Appellant reloaded, pursued the clerk, and shot him in the back of the head. By the time authorities arrived at the scene, appellant and Vargas had departed. The clerk later died from his shotgun wounds.

Approximately one month later, appellant, his common law wife, and Vargas parked at the gas pumps of a convenience store in Plano. While appellant's wife pumped gas, appellant and Vargas entered the store with the same shotgun used at the liquor store. The clerk, who was talking on the telephone with his girlfriend, asked her to call the police. The clerk was taken to a back room, placed on his knees and shot in the back of the head. While appellant contends Vargas shot the clerk, the State presented fingerprint evidence which indicated Vargas again carried beer to the car while appellant shot the clerk. Appellant and Vargas were arrested at the convenience store.

The instant prosecution is for the liquor store murder. Appellant executed a written statement concerning this offense, which, in part, provides:

CHRIS VARGAS & I ROBBED A LIQUOR STORE & I KILLED THE CLERK. THE LIQUOR STORE WAS BEHIND A 7–11 STORE AT PLANO PKWY & AVE K.

\* \* \* \* \* \*

WE WAITED IN THE LIQUOR STORE PARKING LOT UNTIL THE CUSTOMERS ALL LEFT. BOTH CHRIS & I WENT INTO THE LIQUOR STORE & I PULLED A 20 GA. SAWED–OFF SHOTGUN ON THE CLERK. I HAD THE CLERK GIVE ME THE MONEY OUT OF THE CASH REGISTER....

\* \* \* \* \* \*

I SHOT THE CLERK WITH THE SHOTGUN. THE CLERK STARTED COMING AT ME & THREW A CHAIR AT ME & THEN HE RAN OUTSIDE. I LOADED THE SHOTGUN & SHOT THE CLERK AGAIN OUTSIDE THE STORE. THE CLERK HAD JUMPED OVER A FENCE & WAS IN SOME GRASS WHEN I SHOT HIM THE 2ND TIME.

At trial, Bobby Flores testified he was at Vargas' house on the night of the liquor store murder. Flores testified appellant and Vargas left the house and returned with beer and a lot of money. When appellant was asked where the beer and money came from, appellant stated he went into a store, asked

the clerk for the money, took the beer, shot the clerk and left.

In point of error number sixty-eight, appellant contends the evidence is insufficient to show he committed, or attempted to commit a robbery. To review the sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *and, Dunn v. State*, 721 S.W.2d 325, 327 (Tex.Cr. App.1986). Even evidence erroneously admitted is properly considered in a sufficiency review. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex.Cr.App.1993). Therefore, we hold, after considering appellant's written statement and the other evidence presented, a rational trier of fact could have found appellant committed, or attempted to commit, robbery. Point of error number sixty-eight is overruled.

## II.

## THE WRITTEN STATEMENT

### A.

In point of error forty-two appellant contends the trial judge erred in admitting his written statement concerning the liquor store murder. Specifically, appellant contends the written statement did not comply with Tex. Code Crim.Proc.Ann. art. 38.22, § 2(b). Art. 38.22, § 2, provides:

Sec. 2. *No written statement* made by an accused as a result of custodial interrogation *is admissible* as evidence against him in any criminal proceeding *unless it is shown on the face of the statement that:*

(a) the accused, prior to making the statement ... received from the person to whom the statement is made a warning that:

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5) he has the right to terminate the interview at any time; and

(b) *the accused, prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived the rights set out in the warning prescribed by Subsection (a) of this section.*

*Id.* (Emphasis added.)

The *face* of the form upon which appellant's written statement appears contained the following language:

I have been duly warned and advised by [the Detective], a person who has identified himself as an officer of the Plano Police Department, that:

(1) I have the right to remain silent and not make any statement at all and any statement I make will be used against me at my trial;

(2) Any statement I make will be used as evidence against me in court;

(3) I have the right to have a lawyer present to advise me prior to and during questioning;

(4) If I am unable to employ a lawyer, I have the right to have a lawyer appointed (without cost to me) to advise me prior to and during my questioning; and

(4) [sic] I have the right to terminate the interview at any time.

\* \* \* \* \* \*

I have read each page of this statement consisting of [# omitted] page(s), each page of which bears my signature, and corrections, if any bear my initials, and I certify that the facts contained herein are true and correct. I further certify that I have made no request for the advice or presence of a lawyer before or during any part of this statement, nor at any time before it was finished did I request that this statement be stopped. I also declare

that I was not told or prompted what to say in this statement.

[Time, date and signature lines omitted.]

Clearly, this form contained the warnings required by art. 38.22, § 2(a). However, appellant contends the statement was inadmissible under art. 38.22, § 2(b) because it did not show, on its face, the waiver of each of the rights contained within the art. 38.22, § 2(a) warnings. We agree. Under art. 38.22, § 2(b) the written statement must show *on its face* the knowing, intelligent and voluntary waiver of each of the rights of art. 38.22, § 2(a). Art. 38.22, § 2(b) is clear and unambiguous, and "the Legislature is *constitutionally entitled* to expect that [we] will faithfully follow the specific text that was adopted." [1] *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Cr.App.1991).

The State contends appellant's waiver of his rights was demonstrated when he initialed each warning on the statement. The State's contention is supported by the trial judge's findings of fact when he overruled appellant's motion to suppress the statement. While we ordinarily will not disturb factual determinations made by the trial judge, *White v. State,* 779 S.W.2d 809 (Tex. Cr.App.1989), we hold the trial judge's findings in the instant case are not supported by the record. The trial judge's findings can not change what is readily apparent (or more appropriately, lacking) from the face of written statement. We hold that appellant, by initialing each warning reflected on the written statement form, did not affirmatively *waive* the rights contained within the warnings. At best, appellant's initials only indicated he read and understood those warnings. The detective who interrogated appellant testified he "had [appellant] read those rights" and then told him "if he *understood* them I wanted him to initial them, which he did." (Emphasis added.)

The State next contends the final paragraph on the written statement form can be interpreted as a waiver. The State concedes the final paragraph does not contain the word "waiver" and does not address all of the rights enumerated in art. 38.22, § 2(a). But, citing *Penry v. State,* 691 S.W.2d 636 (Tex. Cr.App.1985), *and Hardesty v. State,* 667 S.W.2d 130 (Tex.Cr.App.1984), the State contends the final paragraph is in *substantial compliance* with art. 38.22, § 2(b). The State's reliance on *Penry* and *Hardesty* is misplaced. In each case we considered the admissibility of a written statement which provided on its face all the art. 38.22, § 2(a) warnings, only not in the exact statutory language. Noting that all the warnings required by art. 38.22, § 2(a) appeared on the face of the statement, and that the language conveyed the exact meaning of the statute, we held the written statements substantially complied with art. 38.22, § 2(a). *Penry,* 691 S.W.2d at 643; *and, Hardesty,* 667 S.W.2d at 135. We considered such a situation to be "technical non-compliance with the statute." *Eddlemon v. State,* 591 S.W.2d 847, 850 (Tex. Cr.App.1979) (citing Bubany, *The Texas Confession Statute: Some New Wine in the Same Old Bottle,* 10 Tex.Tech.L.Rev. 67, 73 (1978)).

We have never addressed whether substantial compliance will satisfy art. 38.22, § 2(b). And we need not address the issue today. The final paragraph on the instant statement is not an express waiver of the rights reflected on the form and the language does not convey the knowing, intelligent waiver required by the statute. Further, the final paragraph does not address each of the rights required to be waived under art. 38.22, § 2(b). The instant written statement is clearly more than "technical non-compliance with the statute."

The plain language of art. 38.22, § 2(b), as drafted by the Legislature, requires that, before a written statement of an accused may be admissible, the statement itself, on its face, must show the defendant received the statutory warnings set out in art. 38.22, § 2(a) and, that he knowingly, intelligently, and voluntarily waived those rights. Tex. Code Crim.Proc.Ann. art. 38.22, § 2(b). This is a mandatory requirement enacted by our Legislature to address the defendant's Fifth

---

1. The only exception to this rule occurs when the plain language of the statute will lead to an absurd result. *Boykin,* 818 S.W.2d at 785.

and Sixth Amendment protections recognized by the Supreme Court of the United States. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *and, Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). Given that there is no waiver *on the face* of the documents, we hold the State failed to comply with art. 38.22, § 2(b) and the trial judge erred in admitting the written statement.[2]

## B.

Having determined the trial judge erred in admitting appellant's written statement, we must determine whether the error was harmless. The harmless error rule, codified at Tex.R.App.P. 81(b)(2), requires reversal unless the appellate court determines "beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment." *Id.* In *Harris v. State*, 790 S.W.2d 568 (Tex.Cr.App.1989), we noted the appellate court should *not* focus on the propriety of the outcome of the trial. Instead, the appellate court should be concerned with the integrity of the process leading to the conviction and punishment. Consequently, the appellate court should consider the following six factors when conducting a harm analysis:

1. The source of the error;
2. The nature of the error;
3. Whether or to what extent it was emphasized by the State;
4. Its probable implications;
5. How much weight a juror would probably place upon the error; and,

6. Whether declaring the error harmless would encourage the State to repeat it with impunity.

*Id.,* 790 S.W.2d at 587. We will address each factor *seriatim.*

The Plano Police Department and the prosecutors are clearly the sources of the error. The record demonstrates that written statement forms complying with art. 38.22, § 2(b) were available but not used. The nature of the error was to deprive appellant of the statutory rights afforded by art. 38.22, § 2(a) and to ignore the Legislative protections of art. 38.22, § 2(b) to ensure voluntary statements. Further, more than half of the State's argument was consumed by direct references to appellant's written statement, or details provided by the statement. Clearly, the statement was emphasized by the State.

We next consider the probable collateral implications of this error and the probable weight a juror would place upon the statement. As previously noted, the written statement established each element necessary to convict appellant of capital murder. *See,* Tex.Penal Code Ann. § 19.03(a)(2). The statement indicates *both* appellant *and* Vargas robbed a liquor store in Collin County; that appellant carried a sawed-off shotgun; that appellant shot the clerk; and, when the clerk ran, appellant pursued him, reloaded, and shot the clerk again. Further, the statement provided some corroboration for Flores' testimony; testimony which was impeached and undermined on cross-examination.[3] Clearly, under these circumstances, it

2. The State espouses two other arguments for the allowance of the confessions. In the first, it claims that the confessions were properly admitted under Tex.R.Crim.Evid. 1004 as evidence of a lost recording since the audio of the videotapes was questionable. However, this rule pertains to *lost* recordings, not those that are simply badly made. Further, upon reviewing the videotapes (which were *not* introduced at trial) we noted them to be reasonably audible.

The State's second argument is that the confessions should have been allowed under Tex.Code Crim.Proc.Ann. art. 38.22, § 3(c). However, the State's argument is without merit because the State sought to admit the instant statement as a written statement under art. 38.22(2)(b). Art. 38.22 § 3(c) addresses only the admissibility of an oral or sign language statement.

3. Flores' testimony was similar to appellant's statement. However, Flores did not testify until after appellant's written statement was before the jury. Indeed, three police officers and one jailer testified between the admission of appellant's statement and Flores.

Flores' testimony indicated he was at Vargas' house the evening of December 9, 1990. He stated he drank at least two beers before appellant and Vargas left "to go sell ... something" to buy more beer. Upon their return, they were in possession of beer and a lot of money. When Flores asked where the beer and money came from, appellant stated he went into a store, while Vargas waited in the car, asked the clerk for the money, took the beer, shot the clerk and left.

On cross-examination, Flores admitted he did not remember the exact words appellant or Var-

is very probable the jury relied upon appellant's written statement in their deliberations and verdict.

Finally, we must consider whether declaring the error harmless would encourage the State to repeat it with impunity. In our consideration of this factor, we note that the record also contains an *unsigned* type-written statement prepared for appellant. This statement is virtually identical to the statement signed by appellant which is the subject of this point of error. The unsigned statement contains an express waiver of the rights set forth in Tex.Code Crim.Proc.Ann. art. 38.22, § 2(a). The record does not state how the unsigned statement came to be prepared, whether appellant was given the opportunity to sign it, or why it was not signed by appellant. However, this unsigned statement was not admitted into evidence.[4] This unsigned statement makes it clear that the Plano Police Department was aware of the requirement in art. 38.22, § 2(b) that any statement, on its face, demonstrate the "accused, prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived" the rights set forth in art. 38.22, § 2(a). Furthermore, through appellant's motion to suppress the signed written statement and his objections at trial, the prosecutor and the trial judge were well aware of the deficiencies present on the face of appellant's written statement. Ignoring the deficiencies, the prosecutor offered, and the trial judge admitted, appellant's signed written statement. Consequently, we believe declaring the error harmless would encourage the State to repeat the error with impunity.

After considering the *Harris* factors, we cannot determine beyond a reasonable doubt the admission of the statement made no contribution appellant's conviction or punishment. *See, Higginbotham v. State,* 807 S.W.2d 732, 738 (Tex.Cr.App.1991). Point of error forty-two is sustained.

### III.

## SUFFICIENCY OF THE EVIDENCE AT PUNISHMENT

■ Because appellant may be retried for the instant offense, and the State may again seek the death penalty, we must address points of error sixty-nine and seventy wherein appellant contends the evidence is insufficient to support the jury's affirmative answers to the statutory punishment issues. *See, Wilson v. State,* 863 S.W.2d 59, 67 (Tex. Cr.App.1993); *Jenkins v. State,* 912 S.W.2d 793 (Tex.Cr.App.1993); *Felder v. State,* 758 S.W.2d 760, 770 (Tex.Cr.App.1988); *and,* Tex.Code Crim.Proc.Ann. art. 37.071, § 2(b). Again, when reviewing the sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have affirmatively answered, beyond a reasonable doubt, the statutory punishment issues. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We consider the evidence adduced at both phases of the trial because the jury may rely upon all of the evidence before it. *Santana v. State,* 714 S.W.2d 1, 8 (Tex.Cr.App.1986). Finally, our review will include evidence erroneously admitted, such as appellant's written statement, so long as that evidence was before the jury at the time of their deliberation. *Johnson v. State,* 871 S.W.2d 183, 186 (Tex.Cr. App.1993).

■ In point of error sixty-nine appellant contends the evidence is insufficient to prove his conduct in murdering the clerk was deliberate and with the reasonable expectation that death would result. Art. 37.071, § 2(b)(2). Reviewing the evidence in the light most favorable to the jury's verdict, we find ample support for the jury's affirmative

gas used. Flores could not identify which liquor store appellant robbed and did not state whether the liquor store was in Collin County. Flores admitted he was twice convicted of burglary, in September 1989 and January 1990. Further, Flores admitted the State initially sought to revoke his probation because he had committed additional crimes, but later agreed to extend his probationary period. There were several additional criminal charges pending against Flores at the time of the instant trial, some filed the week he testified.

4. We pause to note that such an unsigned statement does not comply with Tex.Code Crim.Proc. Ann. art. 38.22, § 1.

finding. By appellant's own admission, he and Vargas waited at the liquor store until there were no customers. Appellant carried a sawed-off shotgun and additional ammunition. This evidence indicates appellant planned and prepared to use deadly force.

After retrieving money from the cash register, appellant ordered the clerk to a back room on his knees, and appellant shot the clerk in the chest.[5] When the clerk thereafter managed to escape, appellant reloaded his weapon, pursued the clerk, and shot him in the back of the head. Finally, appellant told Bobby Flores he killed the clerk to avoid later identification. We find that a rational juror could have affirmatively answered this statutory punishment issue. *Wilson*, 863 S.W.2d at 67. Point of error number sixty-nine is overruled.

 In point of error seventy, appellant contends the evidence is insufficient to support the jury's affirmative answer to the second statutory punishment issue; that there was no probability appellant would commit criminal acts of violence that would constitute a continuing threat to society. Tex.Code Crim.Proc.Ann. art. 37.071, § 2(b)(1). In *Keeton v. State*, 724 S.W.2d 58 (Tex.Cr.App.1987), we set forth a non-exclusive list of factors we consider when we review the sufficiency of the evidence with relation to this punishment issue:

1. the circumstances of the capital offense, including the defendant's state of mind and whether he was working alone or with other parties;

2. the calculated nature of the defendant's acts;

3. the forethought and deliberateness exhibited by the crime's execution;

4. the existence of a prior criminal record, and the severity of the prior crimes;

5. the defendant's age and personal circumstances at the time of the offense;

6. whether the defendant was acting under duress or the domination of another

at the time of the commission of the offense;

7. psychiatric evidence; and,

8. character evidence.

*Id.*, 724 S.W.2d at 61. The circumstances of the offense and the use of a sawed-off shot gun demonstrate appellant's propensity toward violence. While appellant did not act alone, the evidence does not support a determination that he was under the domination of his co-defendant. If anything, the evidence indicates just the opposite. We find appellant's actions to be deliberate and calculated.

Appellant was eighteen years of age at the time of the instant offense. The State presented evidence that appellant committed several burglaries as a juvenile and was a disciplinary problem in school. Evidence was also presented that appellant created problems in jail while awaiting trial. Although the evidence conflicted as to whether or not appellant was intoxicated at the time of the instant offense, appellant had a history of alcohol abuse. Both sides presented psychiatric evidence regarding the probability that appellant would commit criminal acts of violence in the future. As expected, this evidence is conflicting.[6] Finally, and perhaps most importantly, appellant committed another capital murder within a month of his commission of the instant offense.

When we consider this evidence with relation to the *Keeton* factors, we find the jury's affirmative answer to the second punishment issue is supported by: the circumstances of the offense; the calculated and deliberate nature in which appellant acted; psychiatric evidence presented by the State; appellant's prior criminal record; his commission of capital murder subsequent to the instant offense; and, the lack of evidence that appellant was under duress or domination of another. We find the following *Keeton* factors militate against an affirmative answer to the second punishment issue: appellant's age; his co-defendant's participation in the instant

---

5. While appellant claims that he shot in a panic after a woman walked into the store and witnessed what was happening, his subsequent actions belie this statement.

6. The jury was free to accept or reject any or all of the evidence because the credibility of that evidence was solely within their domain. *Havard v. State*, 800 S.W.2d 195, 216 (Tex.Cr.App. 1989).

offense; and, appellant's history of alcohol abuse. Considering all the evidence, we conclude a reasonable juror could have found a probability that appellant would commit criminal acts of violence that would constitute a continuing threat to society. Point of error number seventy is overruled.

## IV.

Because Tex.Code Crim.Proc.Ann. art. 38.22, § 2(b) requires that no written statement made by the defendant be admitted into evidence unless, on its face, the statement contains a knowing, intelligent, and voluntary waiver of the rights set forth in art. 38.22, § 2(a), we sustain appellant's point of error forty-two. Unable to determine beyond a reasonable doubt that this error made no contribution to appellant's conviction or punishment, Tex.R.App.P. 81(b)(2), we are constrained to reverse this judgment and remand this case to the trial court.

CLINTON, J., concurs in the result.

McCORMICK, P.J., and CAMPBELL, WHITE and MEYERS, JJ., dissent.

## MOTION FOR REHEARING

MANSFIELD, Judge.

Gustavo Julian Garcia, appellant, was convicted of capital murder—murder intentionally committed in the course of committing or attempting to commit robbery [1]—under Texas Penal Code § 19.03(a)(2) (1990). The jury answered the "deliberateness" and "future dangerousness" special issues (special issues one and two) under Texas Code of Criminal Procedure art. 37.071(b) (1990) in the affirmative and the third special issue (mitigation) in the negative, and punishment was assessed at death in accordance with Texas Code of Criminal Procedure art. 37.071(e) (1990).[2]

Automatic appeal was made to this Court which, on December 21, 1994, reversed the judgment of the trial court and remanded the cause for a new trial. The State's motion for

rehearing was granted on February 8, 1995. We now affirm the judgment of the trial court and will proceed to address appellant's seventy points of error.

### Statement of Facts

The evidence at trial established that on December 9, 1990 appellant and Christopher Vargas entered a liquor store, Beverage Warehouse, in the city of Plano. Appellant was armed with a single shot .20 gauge sawed-off shotgun and had additional shells in his possession. Appellant ordered the clerk, Craig Turski, to give him the money from the cash register. At the same time, Vargas took beer from the store and put it in their car. A female customer walked in the store, saw appellant, and immediately left.

Appellant shot Turski at close range in the abdomen. Turski fled outside the store, pursued by appellant. Appellant then reloaded the shotgun and shot Turski in the back of the head. The female customer, Donna Delozier Sawtelle, subsequently returned to the store with her husband. Finding the store deserted, they called the police. Turski was found and was transported to the hospital, where he later died from gunshot wounds.

On January 5, 1991 at about 12:30 a.m., Vargas, appellant and appellant's girlfriend (Sheila Phanae Loe) stopped at a Texaco station in Plano. While Loe pumped gas, appellant and Vargas entered the station with the same .20 gauge shotgun used to kill Turski. The clerk, Gregory Martin, was on the phone with his girlfriend. As he saw them enter, he informed her he thought he was about to be robbed and asked her to call the police. Martin was taken into a back room and shot at point blank range in the back of the head. He died at the scene.

Appellant claimed Vargas shot Martin. Evidence introduced at trial, however, indicated Vargas was carrying beer to their car (as he did in the earlier robbery) while appellant shot the clerk. In addition, the shotgun was found near the freezer in close proximity

---

1. Appellant was indicted for the capital murder of Craig Turski.

2. All references to the various sections of the Texas Code of Criminal Procedure and the Texas Penal Code are to those in effect as of the date of the offense.

to appellant at the time of his capture. Two firearms experts testified at trial that the shotgun found at the scene of Martin's murder was the same weapon used in Turski's murder.

Alerted by Martin's girlfriend, the police arrived at the scene to find appellant, Vargas and Loe still present, Vargas was found, unarmed, standing over Martin's body. He claimed to have just entered the store and found Martin lying there. Appellant was found hiding in the freezer area close to where the shotgun was found.

Appellant was transported to the Plano Police Department. He was read his "Miranda" warnings repeatedly. He subsequently confessed, both orally and in writing, to the murders of both Turski and Martin. His confessions were videotaped, and a separate written confession was prepared for each offense.

Appellant's written statement regarding the killing of Turski in its entirety reads as follows:

Det. Wilson is writing my statement. Approx. 3–4 weeks from today's date, Chris Vargas & I robbed a liquor store & I killed the clerk. The liquor store was behind a 7–11 store at Plano Pkwy. & Ave. K. I was driving Sheila's Chev. Monza. We waited in the liquor store parking lot until the customers all left. Both Chris & I pulled a 20 ga. sawed-off shotgun on the clerk. I had the clerk give me the money out of the cash register & it was about $500. Chris was grabbing up beer. Chris went outside to pull the car up to the front door. I had the clerk go into a little room next to the cash register & I had him get on his knees. A customer, a white woman walked in the store & saw me & she walked back out. I then panicked and I shot the clerk with the shotgun. The clerk started coming at me & threw a chair at me and then he ran outside. I loaded the shotgun & shot the clerk again outside the store. The clerk had jumped over the fence & was in some grass when I shot him the 2nd time. I then ran to the car & we drove off. I told Sheila my common-law wife about the robbery after we did it. End—G.G.

The statement was completed at 9:05 a.m. on January 5, 1991. Each page is signed by appellant and two witnesses. The statement was taken by Det. David Wilson of the Plano Police Department.

At the top of the first page of the statement appears the following:

I, the undersigned Gustavo Julian Garcia, am 18 years of age, having been born on 9–27–72 at _____. I now live at 804 N. Tennessee, McKinney, Tx. I have been duly warned and advised by Det. David Wilson, a person who has identified himself as an office of the Plano Police Department, that:

GG[ ] (1) I have the right to remain silent and not make any statement at all and any statement I make will be used against me at my trial.

GG[ ] (2) Any statement I make will be used as evidence against me in court.

GG[ ] (3) I have the right to have a lawyer present to advise me prior to an during questioning;

GG[ ] (4) If I am unable to employ a lawyer, I have the right to have a lawyer appointed (without cost to me) to advise me prior to and during my questioning; and

GG[ ] (4) [sic] I have the right to terminate the interview at any time.

Before each of the numbered warnings appear the initials "G.G." These warnings are repeated on each page of the statement and the initials "G.G." appear before each part of the warnings.

Finally, at the bottom of each page, immediately above appellant's signature, appears the following:

I have read each page of this statement consisting of 2 page(s), each page of which bears my signature, and corrections, if any bear my initials, and I certify that the facts contained herein are true and correct. I further certify that I have made no request for the advice or presence of a lawyer before or during any part of this statement, nor at any time before it was finished did I request that this statement be

stopped. I also declare that I was not told or prompted what to say in this statement.

At trial, an acquaintance of appellant, Bobby Flores, testified he was at Vargas' house the night of the Turski murder. Flores testified that Vargas and appellant left the house and subsequently returned with beer and a lot of money. Flores asked appellant where he got the beer and money. Appellant in response stated he went into a store, took the beer and money, shot the clerk and left.

### Appellant's Points of Error

Appellant has raised seventy points of error, sixty-seven in his original brief and three in his first supplemental brief. On original submission, this court addressed and overruled appellant's point of error number sixty-eight, in which he contends the evidence is insufficient to show Turski was killed during a robbery or attempted robbery as alleged in the indictment. This Court also addressed and overruled appellant's points of error numbers sixty-nine and seventy in which he avers the evidence is insufficient to support the jury's affirmative answers as to the special issues. Tex.Code Crim.Proc. 37.071(b).

Our disposition of points of error numbers sixty-eight, sixty-nine and seventy is not disputed by the parties on rehearing and need not be readdressed.

This Court previously held that the trial judge erred in admitting appellant's written statement as that statement was found to be not in compliance with Tex.Code Crim.Proc. art. 38.22, § 2(b). Specifically, we held that the statement failed to contain required language demonstrating that appellant knowingly, intelligently and voluntarily waived the rights described in Tex.Code Crim.Proc. 38.22, § 2(a) and which are delineated on each page of the statement. Furthermore, we held that the error was not harmless under Tex.Rule App.Proc. 81(b)(2).

In reversing appellant's conviction for the above reason the Court sustained appellant's point of error number forty-two. Accordingly, we will address appellant's point of error number forty-two and related points of error numbers forty-three through fifty-one first.

### I. Appellant's Written Statement Substantially Complies with the Requirements of Art. 38.22, Sec. 2(b).

In points of error numbers forty-two through fifty-one, appellant asserts appellant's written confession did not meet the requirements of Texas Code of Criminal Procedure article 38.22, § 2(b), and its admission was thus erroneous. Appellant also asserts appellant's written confession was taken in violation of his right to effective assistance of counsel under both the Texas and United States Constitutions, in violation of his right against self-incrimination under both constitutions and in violation of his due process rights under the United States Constitution. We will address these points of error collectively.

Texas Code of Criminal Procedure article 38.22, § 2(a) and 2(b) in their entirety are as follows:

Sec. 2. No written statement made by the accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding unless it is shown *on the face of the statement* that: (a) the accused, prior to making the statement, either received from a magistrate the warning provided in Article 15.17 of this code or received from the person to whom the statement is made a warning that:

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5) he has the right to terminate the interview at any time; and

(b) the accused, prior to and during the making of the statement, knowingly, intelligently and voluntarily waived the rights

set out in the warning prescribed by Subsection (a) of this section.

(Emphasis added.)

Appellant's voluntary written statement was admitted as State's exhibit 3. At the top of each page appears the warnings required by § 2(a); the warnings mirror the statutory language almost identically except that it states any statement he makes *will* (instead of "may") be used against him at trial. On each page, in boxes provided, the initials GG appear next to each part of the warnings. Finally, at the bottom of each page, in close proximity to appellant's signature, appears additional language.

Appellant contends, in effect, the written statement is not admissible because it does not meet the requirements of article 38.22, § 2(b). Alternatively, appellant contends the written statement is inadmissible because he was under hypnosis or was intoxicated or was induced to confess by promises of leniency made by the officer who took his statement.

Clearly, the written statement contains the warnings required by Article 38.22, § 2(a). This Court, however, has never ruled what additional language, if any, is required to be included as part of a written statement in order to comply with Article 38.22, § 2(b). Unlike § 2(a), § 2(b) does not provide any guidelines as to language which might be included as part of a written statement that would constitute a knowing, intelligent and voluntary waiver by the individual of his § 2(a) rights.

 In *Boykin v. State*, 818 S.W.2d 782 (Tex.Cr.App.1991), we held, "When we interpret statutes such as Art. 4476–15(b), Sec. 2(a)(1) we seek to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation. . . . Thus, if the meaning of the statutory text, when read using the established canons of construction relating to such text, should have been plain to the legislators who voted on it, we ordinarily give effect to that plain meaning. . . . where application of a statute's plain language would lead to absurd consequences that the Legislature could not possibly have intended, we should not apply the language

literally." *Boykin,* at 785, citing *Camacho v. State,* 765 S.W.2d 431 (Tex.Cr.App.1989); *Smith v. State,* 789 S.W.2d 590, 592 (Tex.Cr.App.1990) and *Faulk v. State,* 608 S.W.2d 625, 630 (Tex.Cr.App.1980).

*Boykin* compels us, in the present case, to determine if the written statement complies with the Legislature's intent expressed in § 2(b): did appellant knowingly, intelligently, and voluntarily waive his § 2(a) rights?

 First, appellant initialed, in the appropriate spaces on each page (a total of fifteen times) that he was informed as to his rights and it can be inferred that he understood each of his rights, the rights provided him under § 2(a). Second, appellant signed each page, his signature being adjacent to additional language which reinforces the inescapable conclusion that he knew and understood his § 2(a) rights. Third, prior to the making of his statement, appellant was informed as to his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

It is beyond dispute appellant received his Section 2(a) warnings, they being placed at the top of each page of his statement. The appearance of his initials before each of the five warnings is evidence that he received them and that he read and understood them; appellant does not contend otherwise. The additional language appearing next to appellant's signature is evidence of reiteration that he understood his rights and knew what he was doing when he gave his statement. Furthermore, the additional language clearly is evidence of knowing, voluntary and intelligent waiver of his right to consult counsel before or during the giving of his statement (Sections 2(a)(3) and 2(a)(4)) and of his right to terminate the giving of his statement at any time (Section 2(a)(5)). Finally, the individual initialing of the paragraphs by appellant pertaining to his right to remain silent and to the likelihood that any statement he made would be used against him in court, when taken into context with the language at the bottom of each page next to his signature, is evidence that he knowingly, voluntarily and intelligently waived the protections afforded appellant by Sections 2(a)(1) and 2(a)(2).

We agree that appellant's statement, while sufficient to comply with Article 38.22, Section 2(b), is by no means a model of clarity on this point. The clearly preferable practice is for a written statement, to meet unambiguously the requirements of Section 2(b), to contain the following language, near or adjacent to the signature of the individual giving the statement: "I knowingly, voluntarily and intelligently waived the rights described above before and during the making of this statement." See *Penry v. State*, 691 S.W.2d 636 (Tex.Crim.App.1985) and *Cannon v. State*, 691 S.W.2d 664, 674 (Tex.Crim.App. 1985). We are persuaded, however, that, though a close call, appellant did, on the face of his voluntary statement, knowingly, voluntarily and intelligently waive his Section 2(a) rights in a manner sufficient to comply with the legislature's intent when it enacted Section 2(b).

The trial judge, following a hearing on appellant's motion to suppress the written confession, concluded, in his findings of fact and conclusions of law, appellant evidenced his understanding of his rights and waiver thereof on the face of the statement by placing his initials by each of the warnings that appear on the face of his written confession. The court accordingly found appellant waived his rights under § 2(a). The court also found he orally waived his rights *after* being informed of his rights under *Miranda*, *supra*, and *prior* to giving his written statement.

We have held that factual determinations made by the trial court at a hearing on a motion to suppress evidence shall not be disturbed on appeal if those findings are supported by the record. *Urbano v. State*, 837 S.W.2d 114 (Tex.Cr.App.1992); *Johnson v. State*, 803 S.W.2d 272 (Tex.Cr.App.1990). See also *Calloway v. State*, 743 S.W.2d 645 (Tex.Cr.App.1988). We find no abuse of discretion by the trial court. Appellant makes the same arguments with respect to appellant's confession to the murder of Gregory Martin (admitted at punishment); we find them unpersuasive for the reasons given above. Points of error numbers forty-two and forty-three are overruled.

 Appellant avers his confession was not voluntarily made because he was intoxicated or under hypnosis. The record does not support his claim he was intoxicated at the time he confessed. Furthermore, even if appellant was intoxicated at the time he confessed, this fact alone is not, in and of itself, sufficient to render his confession involuntary. *Nichols v. State*, 754 S.W.2d 185 (Tex.Cr.App.1988). At the hearing, the trial court found there was evidence appellant had been drinking prior to the time of his arrest and confession, but he was not intoxicated at the time of his arrest and confession. The court found he was not under the influence of alcohol to such an extent so as to render his confession involuntary. At a hearing to suppress evidence, the trial court is the sole judge of the weight and credibility of the evidence and the trial court's finding may not be disturbed on appeal absent a clear abuse of discretion. *Alvarado v. State*, 853 S.W.2d 17, 23 (Tex.Cr.App.1993). Appellant never testified he was intoxicated when he confessed; the only evidence produced in support of appellant's assertion is a medical screening form completed at the time of appellant's arrest that he appeared to be under the influence of alcohol or drugs. Detective Wilson testified appellant did not appear to be intoxicated. Accordingly, the trial court did not abuse its discretion in finding appellant was not intoxicated so as to render his confession involuntary.

 Appellant's claim he was under hypnosis at the time of his confession is based on testimony by Plano Police Department Detective Meeks that Detective Wilson (the officer who took appellant's confession) is a trained hypnotist. Appellant does not however, produce evidence or expert testimony that he was under hypnosis at the time he confessed. Detective Wilson testified he did not hypnotize appellant. Appellant fails to show any coercive conduct on the part of the police and, absent such evidence, his confession cannot be said to have been taken in such a manner so as to violate his federal due process rights. *Colorado v. Connelly*, 479 U.S. 157, 164, 107 S.Ct. 515, 520, 93 L.Ed.2d 473 (1986); *Alvarado, supra*, at 19. The trial court did not abuse its discretion in conclud-

ing appellant was not hypnotized at the time he gave his confession.

■ Appellant also alleges his statement was involuntary as he was improperly induced to confess by promises of leniency made by the police. A promise made by a law enforcement officer may render a confession involuntary if it was positive, made or sanctioned by someone with apparent authority, was of some benefit to the defendant and was of such a character as would likely cause a person to speak untruthfully. *Freeman v. State*, 723 S.W.2d 727 (Tex.Cr.App.1986); *Jacobs v. State*, 787 S.W.2d 397 (Tex.Cr.App. 1990). To determine if the promise of a benefit was likely to influence appellant to speak untruthfully, an appellate court must look to whether the circumstances of the promise made the defendant "inclined to admit a crime he didn't commit." *Sossamon v. State*, 816 S.W.2d 340, 345 (Tex.Cr.App.1991).

■ During the hearing on the admissibility of appellant's confession, Detective Wilson testified as to his conversations with appellant.

Q. [Appellant's Counsel] Is it a fair characterization that you told him that while you can't make any promises, that if it's like he's telling it, that he didn't pull the trigger, that Chris shot the clerk, that there's a possibility that he wouldn't be charged with capital murder, but he would be tried for aggravated robbery?

A. [Detective Wilson] That's what I said.

(Vol. 12, p. 993.)

Q. What did you say?

A. I told him that if he knew anything about Chris [Vargas] any robberies, shootings and he talked to me about it, I'd do whatever I could to help him out.

(Vol. 12, p. 1011.)

\* \* \* \* \* \*

Q. Did you tell him you'd talk to the D.A. and see what you could work out?

A. I told him I'd talk to the D.A.

(Vol. 12, p. 1011.) The videotape of the interview shows Detective Wilson, at least four times, said he would do what he could to help appellant if he gave information of Vargas' involvement in other crimes.

In *Dykes v. State*, 657 S.W.2d 796 (Tex.Cr. App.1983) we held that, where a police officer made a general statement he would help appellant if appellant cooperated with him, appellant's confession was voluntary and not the result of a promise of leniency or a lighter sentence. In *Sorola v. State*, 674 S.W.2d 809 (Tex.App.—San Antonio 1984) the court held the mere fact that the police officer told appellant he would inform the district attorney as to his cooperation or lack of same was not a promise so as to render appellant's confession inadmissible.

Detective Wilson did *not* promise appellant he would not be charged with capital murder if Chris Vargas, not appellant pulled the trigger, only that it was a possibility. Detective Wilson did not make any specific promises—only that he would try to "help him out" or would "talk to the D.A."—if appellant furnished him information on Vargas' involvement in other crimes.

The trial court found Detective Wilson's statements were not made in the course of plea negotiations with appellant; nor was he promised anything or tricked into confessing against his will. The court found that Detective Wilson's comments and questions were aimed at getting appellant to tell the truth. The record supports the trial court's finding, and appellant fails to show any abuse of discretion. Factual determinations by the trial court made at a hearing on a motion to suppress evidence should not be disturbed on appeal if supported by the record. *Alvarado, supra; Johnson, supra.*

■ Finally, appellant fails to brief separately his contentions that he is entitled to relief under both the Texas and the United States constitutions. Any point of error contending a violation of the Texas Constitution and not separately setting forth supporting arguments and authorities is inadequately briefed and will not be addressed. *McCambridge v. State*, 712 S.W.2d 499 (Tex.Cr.App. 1986); *Dinkins v. State*, 894 S.W.2d 330, 350

(Tex.Cr.App.1995); *Goodwin v. State,* 799 S.W.2d 719, 723–725 (Tex.Cr.App.1990).[3]

Appellant's points of error numbers forty-four through fifty-one are overruled.

### Appellant's Remaining Points of Error

 In points of error numbers one through four, appellant contends the trial court erred in sustaining the State's challenge for cause of venireperson Robert Phillips. During voir dire, Phillips expressed difficulty in answering the special issues affirmatively so as to subject appellant to the death penalty due to appellant's youth. Appellant was eighteen years old when the offense was committed.

Q. [Prosecutor] No, I understand. I understand. It's an option. What I am saying is in the case of a youthful defendant in a robbery-murder, you will never answer those questions in a way that will lead to the imposition of the death sentence. Is that correct?

A. [Phillips] Not the fourth one.

Q. Fourth special issue, though, is always going to be yes in the case of a youthful defendant regardless of the facts?

A. That's right.

Q. And I'm not quarreling with you, but are you essentially telling me that if you're on this jury I don't have a shot at the death penalty?

A. That's correct.

Under Texas Code of Criminal Procedure, art. 35.16(b)(3), a challenge for cause may be made by the State for the following reason: "(3) that [the juror] has a bias or prejudice against any phase of the law upon which the State is entitled to rely for conviction or punishment."

In *Hawkins v. State,* 660 S.W.2d 65 (Tex. Cr.App.1983), we held that the trial court properly sustained the State's challenge for cause to a venireperson who testified she would vote in such a manner so as to avoid the death penalty for the defendant regardless of the evidence which might be developed at trial. See also *Staley v. State,* 887 S.W.2d 885, 894 (Tex.Cr.App.1994); *Riley v. State,* 889 S.W.2d 290, 301 (Tex.Cr.App.1993); *Morgan v. Illinois,* 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992). In *White v. State,* 779 S.W.2d 809 (Tex.Cr.App.1989) we found the trial court ruled correctly in sustaining the State's challenge for cause to a venireperson who could vote for the death penalty only for "premeditated" murders and to another venireperson who could not consider the entire range of punishment of the offense.

We have held on several occasions that, "on appeal, we recognize that great deference must be given to the trial court judge who is in the best position to see and hear the prospective jurors and to evaluate their responses. We will reverse a trial court's ruling on these issues only when the record shows a clear abuse of discretion on the trial court's part." *Jacobs v. State,* 787 S.W.2d 397, 402 (Tex.Cr.App.1990). See also *Callins v. State,* 780 S.W.2d 176, 194 (Tex.Cr.App. 1986); *Cantu v. State,* 842 S.W.2d 667, 683 (Tex.Cr.App.1992); *Butler v. State,* 872 S.W.2d 227, 235 (Tex.Cr.App.1994); *White, supra,* at 822.

The record shows venireperson Phillips testified he would never vote so as to impose the death penalty and therefore was properly subject to a challenge for cause by the State under Article 35.16(b)(3). A prospective juror who is unable to consider the full range of punishment may be challenged for cause under the standards established by *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), and *Morgan v. Illinois, supra.* See also *Martinez v. State,* 588 S.W.2d 954 (Tex.Cr.App.1979); *Fearance v. State,* 771 S.W.2d 486 (Tex.Cr.App.1988). Appellant fails to show any abuse of discretion by the trial court. Points of errors numbers one through four are overruled.

In points of error numbers five through seven, appellant claims the trial court erred in granting the State's challenge for cause to venireperson Kieke and denied appellant ef-

---

**3.** We note that appellant's contentions that Article 1, § 10 of the Texas Constitution affords him greater protection against self-incrimination and of his right to counsel than the Fifth and Sixth Amendments to the U.S. Constitution have no merit. *Thomas v. State,* 723 S.W.2d 696 (Tex.Cr. App.1986).

fective assistance of counsel under the Sixth Amendment of the U.S. Constitution and Art. I § 10 of the Texas Constitution by denying him the opportunity to voir dire Kieke.

During the voir dire of venireperson Kieke, the State made four challenges for cause, three of which were overruled by the trial court. The State then asked Kieke a hypothetical question with respect to special issue three (provocation). The question was allowed over the objection of appellant. Kieke answered the question in the negative, essentially stating she could never find that the killing of a robbery victim by the robber was a reasonable reaction to something the victim might have done to provoke him. Kieke did not alter her response despite appellant's attempts to rehabilitate her on this issue. The trial court then sustained the State's challenge for cause.

We have held on several occasions that Art. 35.16(b)(3) allows the State to challenge for cause a venireperson who indicates he or she is biased against the defendant. *White, supra; Flores v. State,* 871 S.W.2d 714, 719 (Tex.Cr.App.1993); *Guerra v. State,* 771 S.W.2d 453, 467 (Tex.Cr.App.1988). Kieke's response clearly indicated that she could not find a murder committed during a robbery to be reasonable as a response to provocation, thus indicating a bias against appellant with respect to special issue three. The record supports the ruling of the trial court and appellant fails to show any abuse of discretion. See *Jacobs, supra,* at 402. Indeed, the entire record of voir dire of Kieke—some four hour's worth—shows a vacillating venireperson and we will accord great deference to the decision of the trial court in such circumstances. *Mooney v. State,* 817 S.W.2d 693 (Tex.Cr.App.1991).

Appellant fails to cite any authorities or make any substantive arguments with respect to either his federal or Texas constitutional claims of denial of effective assistance of counsel resulting from the trial court's action concerning venireperson Kieke. Based on *McCambridge, supra, Dinkins, supra,* and Texas Rule of Appellate Procedure 74(f), we overrule these claims as inadequately briefed.

Points of error numbers five, six and seven are overruled.

Appellant avers in point of error number eight that the trial court erred in granting the State's challenge for cause to venireperson Collins. Venireperson Collins stated in his jury questionnaire he did not believe in the death penalty. In response to questions from both the State and appellant's counsel, Collins testified he would answer the special issues in such a way as to avoid imposition of the death penalty.

Collins was properly subject to the State's challenge for cause *not because* of his views on capital punishment but because he clearly stated he would answer the special issues so as to prevent its imposition. *Wainwright v. Witt, supra; Staley, supra; Holland v. State,* 761 S.W.2d 307 (Tex.Cr.App.1988); *Smith v. State,* 744 S.W.2d 86 (Tex.Cr.App. 1987). Finding no abuse of discretion by the trial court, we overrule appellant's point of error number eight.

In point of error number nine, appellant contends the trial court erred in excusing for cause venireperson Gallo. The record indicates Gallo opposed the death penalty and testified his past experiences as an army general and combat veteran would prevent him from being a fair and impartial juror.

Gallo indicated he could return a verdict of guilty "if they prove beyond a reasonable doubt, there ain't no doubt in your mind that appellant committed the crime." During voir dire, Gallo initially testified he could not answer the first three special issues in such a way as to result in imposition of the death penalty. Later, he indicated he could answer the special issues based on the facts. However, in response to a question asked by the court, Gallo stated he would answer special issue three in the affirmative as he would always find there to be sufficient mitigating evidence. Whereupon, the court granted the State's challenge for cause.

The record supports the trial judge's finding that Gallo, due to his views on the death penalty, would be unable to follow the law with respect to the special issues. We have held that a trial court's ruling on such mat-

ters should be reversed only when the record shows a clear abuse of discretion. *Jacobs, supra,* at 402; *Davis v. State,* 782 S.W.2d 211, 216 (Tex.Cr.App.1989); *Briddle v. State,* 742 S.W.2d 379 (Tex.Cr.App.1987), *cert. denied* 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1987). See also *Wainwright v. Witt, supra; Holland, supra; Staley, supra.* When viewed in its entirety Gallo's testimony is sufficient to support the trial court's decision to grant the State's challenge for cause. Point of error number nine is overruled.

■■■ Appellant avers, in point of error number ten, the trial court improperly excused for cause venireperson Wycoff. Wycoff testified that, due to his religious or personal beliefs against the death penalty, he could not answer the special issues in such a way so as to allow imposition of the death penalty. He testified that he would always answer special issue three in the affirmative *unless* appellant testified he committed the murder or *unless* at least *two* eyewitnesses testified appellant committed the murder.

We previously held, in *White, supra,* the trial court properly sustained the State's challenge for cause of a prospective juror who stated she could not convict the defendant of capital murder absent eyewitness testimony. See also *Caldwell v. State,* 818 S.W.2d 790, 791, 792 (Tex.Cr.App.1991) and *Barnard v. State,* 730 S.W.2d 703 (Tex.Cr. App.1987). As our holding in *White* is clearly on point and appellant does not present compelling reasons for us to repudiate *White,* appellant's point of error number ten is overruled.

■■■ In point of error number eleven, appellant contends the trial court improperly conducted a general voir dire of fifteen prospective jurors separate and apart from the entire venire panel, on August 7, 1991. Appellant claims that this action by the trial court violated Texas Code of Criminal Procedure art. 35.17(2) and also resulted in appellant's effectively being denied his right to request a shuffle of the jury.

The record clearly shows that no voir dire actually occurred and the fifteen prospective jurors who were present had simply indicated previously they would not be able to attend the general voir dire on August 12, 1991. No questions concerning the case, burden of proof, reasonable doubt, etc., were addressed to the prospective jurors by the court, the State or appellant. No questions were asked to determine why the fifteen could not be present at general voir dire. One of the fifteen actually served on the jury.

As no voir dire as that term is contemplated under art. 35.17(2) actually took place on August 7, 1991 and appellant fails to show that he was harmed in any way by what did take place, appellant's right to a shuffle under Texas Code of Criminal Procedure, art. 35.11 was not violated. Finally, the trial court did not err in failing to issue writs of attachment. *Jackson v. State,* 745 S.W.2d 4 (Tex.Cr.App.1988); *Porter v. State,* 623 S.W.2d 374 (Tex.Cr.App.1981).

Appellant's point of error number eleven is overruled.

■■■ In points of error numbers twelve, thirteen and fourteen, appellant contends the trial court erred by conducting voir dire of small groups of venirepersons following the general voir dire of the entire panel and prior to individual voir dire. Appellant contends this action violated his due process rights under both the United States and Texas Constitutions.

Article 35.17(2) of the Texas Code of Criminal Procedure provides: "In a capital case in which the State seeks the death penalty ... on demand of the State or defendant, either is entitled to examine each juror on voir dire individually and apart from the entire panel, and may further question the juror on the principles propounded by the court."

The record shows that, following general voir dire of the entire panel on August 12, 1991 the trial court commenced individual voir dire on September 9, 1991. Initially, the court conducted voir dire in groups of eight venirepersons, following which it conducted one-on-one individual voir dire. Appellant's objection to this procedure was overruled.

Appellant fails to cite any authority to support his position that the trial court's action with respect to use of an intermediate and additional step in the voir dire process constitutes reversible error. This court has,

on at least two occasions, upheld the use of sub-panels prior to one-on-one individual voir dire. *Esquivel v. State*, 595 S.W.2d 516 (Tex. Cr.App.1980); *Hall v. State*, 661 S.W.2d 113 (Tex.Cr.App.1983). Furthermore, appellant fails to make any substantive arguments or cite any authority with respect to his claims that the trial court's action violated his federal or state constitutional due process rights and thus these points are inadequately briefed. *McCambridge, supra; Dinkins, supra; Goodwin, supra.*

Appellant's points of error numbers twelve, thirteen and fourteen are overruled.

Appellant, in points of error numbers fifteen through twenty-one, contends that numerous errors were made in the selection of the venire panel.

In point of error number fifteen, appellant alleges he was denied a special venire. A review of the record indicates that no motion for a special venire was ever filed by appellant as required by Texas Code of Criminal Procedure art. 34.01. The record does indicate appellant was provided a copy of the list of venirepersons at least two days before the date on which his case was set for trial, per art. 34.04. Point of error number fifteen is overruled.

In points of error numbers sixteen and seventeen, appellant contends the trial court erred during his challenge to the first array and his motion to quash the first array. A challenge to the array must be in writing and supported by affidavit, as provided under Texas Code of Criminal Procedure art. 35.07. Appellant's challenge to the first array and his motion to quash the array are both in writing, but neither are sworn to. An instrument that is not sworn to is not supported by affidavit. See *Esquivel, supra;* Tex.Penal Code 1.07(35). As neither of appellant's motions are supported by affidavit, nothing is preserved for review. *Hurd v. State*, 513 S.W.2d 936 (Tex.Cr.App.1974); *Esquivel, supra.* Points of error numbers sixteen and seventeen are overruled.

Appellant, in points of error numbers eighteen through twenty-one, contends that the juror selection method employed by Collin County resulted, in effect, in a jury that did not reflect a fair cross-section of the community and tended to exclude certain racial groups. The record indicates that Collin County does not use the jury wheel method, nor are venirepersons summoned by the sheriff, the two methods described in Texas Code of Criminal Procedure art. 34.02. Collin County selects jurors utilizing a computer method based on voter registration lists, a method previously approved by the Secretary of State.

Appellant fails to produce any evidence that the juror selection method used by Collin County systematically and arbitrarily excludes a cognizable protected class, e.g., Hispanics, from jury service. He fails to show anyone was either included or excluded from jury service due to race. Appellant fails to cite any authority for his position that Collin County's juror selection method is unconstitutional because it fails to take race into account. It is well-settled that selection of jurors from voter registration lists is constitutional under both the U.S. and Texas Constitutions. *U.S. v. Carter*, 568 F.2d 453 (5th Cir.1978); *DeBlanc v. State*, 799 S.W.2d 701, 708 (Tex.Cr.App.1990).

Furthermore, the burden of proof is on appellant to show the Collin County juror selection process intentionally, systematically and arbitrarily excludes protected classes from jury service. Appellant fails to produce any statistical or other evidence in support of his contentions.

We overrule appellant's points of error numbers eighteen through twenty-one.

In point of error number twenty-two, appellant contends the indictment in this case should have been quashed because the grand jury was impaneled in a manner which violates Texas Code of Criminal Procedure arts. 19.01, 19.04, 19.06 and 19.09. In point of error number twenty-three, appellant alleges the grand jurors were selected in a racially discriminatory manner in violation of the Fourteenth Amendment to the U.S. Constitution.

The trial court entered findings of fact and conclusions of law. The court found that the 219th Judicial District Court

of Collin County appointed five persons as grand jury commissioners for the January 1991 Term (no more than five commissioners may be appointed pursuant to art. 19.01(a)), and there was no evidence that they were not qualified under art. 19.01(a) to serve. The court found no evidence that the twenty persons selected as grand jurors were not qualified to serve as such under art. 19.08. The court found no evidence of racial discrimination with respect to selection of the grand jurors.

We have held that, absent an allegation of fraud or injury resulting from the selection of the grand jurors, minor deviations from the statutory procedure do not rise to a level requiring reversal. *Gentry v. State,* 770 S.W.2d 780 (Tex.Cr.App.1988); *Martinez v. State,* 134 Tex.Crim. 180, 114 S.W.2d 874 (App.1938); *Ex parte Becker,* 459 S.W.2d 442 (Tex.Cr.App.1970). Appellant does not allege any fraud in the process used to select grand jurors nor does he show that the manner in which the grand jury was selected was injurious to his rights. Appellant fails to support, with evidence, his assertion that there were six grand jury commissioners in violation of the statutory maximum of five.

As a general rule the findings of the trial court in a pretrial hearing are not disturbed on appeal absent a showing by appellant that the trial court abused its discretion. *Lucas v. State,* 791 S.W.2d 35 (Tex.Cr.App.1989); *Russell v. State,* 727 S.W.2d 573 (Tex.Cr.App. 1987); *Hawkins v. State,* 613 S.W.2d 720 (Tex.Cr.App.1981). Appellant has shown no abuse of discretion by the trial court and fails to show any harm resulting from his allegations of various minor statutory violations with respect to the selection of the grand jury. Point of error number twenty-two is overruled.

■ Appellant correctly asserts that it is a violation of the U.S. Constitution's equal protection clause for the State to try a defendant under an indictment issued by a grand jury from which persons of his race or color have been excluded by the State. *Hernandez v. Texas,* 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954); *Muniz v. State,* 672 S.W.2d 804 (Tex.Cr.App.1984).

■ The United States Supreme Court, in *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977) established a three-part test for determining if an equal protection violation has occurred in the selection of a grand jury. The burden rests on the defendant, the Court held, to ... "(2) demonstrate the group is underrepresented by comparing the proportion of the group in the total population to the proportion called to serve over a significant period of time." *Castaneda,* at 494, 97 S.Ct. at 1280.

■ Appellant failed to present any evidence of the percentage of Hispanics in Collin County. He offered no evidence as to the racial composition of the grand jury that indicted him, except that two of the twenty grand jurors were white. Furthermore, he has failed to produce evidence of any disparity between the percentage of residents of Collin County that are Hispanic and the percentage of residents summoned for service as grand jurors in Collin County that are Hispanic. Appellant fails to satisfy the second part of the test set forth in *Castaneda.* We overrule appellant's point of error number twenty-three.

■ In point of error number twenty-four, appellant contends he was denied his right under art. 33.03 to be present at certain proceedings held on August 21, 1991. On that day about ten prospective jurors were qualified and received instructions from the court. Counsel for appellant was notified in advance but he informed the court he could not be in attendance because of some unspecified medical reason and because he would be in trial. Appellant and appellant's counsel indicated they had no objection to the proceedings occurring without their presence and so indicated on the record. Subsequently, the State filed a motion to quash the venire. At the hearing on the motion, appellant indicated his objection to it. The trial court complied with appellant's wishes and denied the state's motion.

We have held that a defendant may not, by his own actions, create reversible error. Appellant, in the present case, affirmatively waived his right to be present at the August 21 proceedings, a confrontation clause-based

right granted under Texas Code of Criminal Procedure 33.03. We have held that this right, even if denied, is subject to harmless error analysis. *McMahon v. State*, 582 S.W.2d 786 (Tex.Cr.App.1978), *cert. denied* 444 U.S. 919, 100 S.Ct. 238, 62 L.Ed.2d 175 (1978). See also *Weber v. State*, 829 S.W.2d 394, 396 (Tex.App.—Beaumont 1992). Appellant was not denied his right to be present—he waived it. Furthermore, he objected to the State's motion to quash the venire, the only method by which the effects of the August 21 proceedings could have been eliminated. Our holdings in *Curtis v. State*, 519 S.W.2d 883 (Tex.Cr.App.1975), *Beasley v. State*, 634 S.W.2d 320 (Tex.Cr.App.1982) and *Kelley v. State*, 823 S.W.2d 300 (Tex.Cr.App. 1992) are dispositive.

Appellant's point of error number twenty-four is overruled.

▬▬▬ In points of error numbers twenty-five through thirty, and points of error numbers thirty-one through thirty-six, appellant avers that the State's peremptory challenges to venirepersons Holmes, an African-American, and Diaz, a Hispanic, were exercised in a racially discriminatory manner. As a result, appellant alleges he was denied due process of law under both the Texas and United States Constitutions and the right to a fair and impartial jury under both the United States and Texas Constitutions. Furthermore, appellant claims he was subjected to cruel and unusual punishment in that the death penalty was imposed on him in an arbitrary and capricious manner in violation of both the Texas and United States Constitutions.

The United States Supreme Court has held that it is a violation of the equal protection clause of the United States Constitution for the State or for the accused to exercise peremptory challenges in a racially discriminatory manner. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *Georgia v. McCollum*, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992). *Batson* has been interpreted by the Court to proscribe peremptory challenges based on gender. *J.E.B. v. Alabama*

*ex rel T.B.*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).

Appellant does not make an equal protection claim and *Batson, Powers, McCollum,* and *J.E.B.* are equal protection cases. In any event, the record clearly demonstrates the State exercised its peremptory challenges in a racially neutral manner.

## A. Prospective Juror Holmes (Points of Error Twenty–Five Through Thirty)

In her juror questionnaire, venireperson Holmes stated "I could never, under any circumstances and regardless of the facts, return a verdict which would result in the death penalty." She affirmed her opposition to the death penalty during voir dire. She also indicated her inability to vote for conviction regardless of the evidence presented by the State. She refused to state she could answer special issue number three in the negative and indicated she would answer it in the affirmative in any event. She also claimed that her son had been unfairly prosecuted in Collin County.

The State then exercised its peremptory challenge (an earlier challenge for cause was denied by the court), giving its reasons as being her opposition to the death penalty, her inability to vote for conviction regardless of the evidence, her refusal to state she could answer, "no" to special issue number three and bias against the prosecution because of her statement her son had been unfairly prosecuted in Collin County, and deceptive answers.

The trial court found the State's use of its peremptory challenge was not racially motivated.

"... The Court finds that the reasons for challenge or for exercising a peremptory strike with respect to Hazel Holmes are racially neutral being a—well, has previously indicated a close call with respect to challenge for cause and the Court is of the opinion and belief, based on the State's reasons that they are legitimate and racially neutral."

## B. Prospective Juror Diaz

Prospective Juror Diaz expressed great reluctance to impose the death penalty on appellant because of appellant's youth. He testified that he would hold the State to a very high burden of proof during the punishment phase of the trial. Diaz stated he would place the burden of proof as to mitigation on the State and that the burden would be "treated the same as beyond a reasonable doubt." Finally, Diaz testified that life in prison (without parole) was an appropriate punishment for persons with a record of extreme violence.

The Court found that the State used its peremptory challenge to strike Diaz in a racially neutral manner.

"With respect to Mr. Diaz, I have listened carefully, particularly carefully, in this to this voir dire. I believe that there were ample reasons for either side to have exercised a peremptory strike in this particular instance, although he was not challenged for cause and he would otherwise be a qualified juror, but the Court is of the opinion that either side could have legitimately and from a racially neutral standpoint exercised a peremptory stride with respect to this particular juror. . . ."

Q. [Prosecutor]: Judge, so the record is clear, is the Court making a finding that my explanations are racially neutral?

A. [The Court]: It is.

The record shows the State had legitimate concerns as to the impartiality of venirepersons Diaz and Holmes. Appellant fails to show any purposeful discrimination on the part of the State. Indeed, appellant does not make a prima facie showing that the State's peremptory challenges were racially motivated, which he is required to do. *Wheatfall v. State*, 882 S.W.2d 829, 835 (Tex.Cr.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 742, 130 L.Ed.2d 644 (1995). Each venireperson's re-

sponses to questions posed to them during voir dire clearly demonstrate that they were not favorable to the State and that the State had very good reasons—having absolutely nothing to do with their race—for not wanting either on the jury. In exercising its peremptory challenges to Holmes and Diaz, the State was merely acting in a manner that the peremptory challenge system encourages—the selection of juries that are devoid of members who are markedly partial to either side. See *Holland v. Illinois,* 493 U.S. 474, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990).

We have held that where the decision of the trial court with respect to peremptory challenges or challenges for cause is supported by the record and appellant fails to show an abuse of discretion, we will not reverse based on such decision. *Vargas v. State,* 838 S.W.2d 552 (Tex.Cr.App.1992). *Cantu, supra; Caldwell, supra; White, supra.* See also *Whitsey v. State,* 796 S.W.2d 707 (Tex.Cr.App.1989); *Williams v. State,* 804 S.W.2d 95, 101 (Tex.Cr.App.), *cert. denied,* 501 U.S. 1239, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991). In the present case, the record supports the findings of the trial judge that there were ample, non-racial reasons to justify the State's exercise of peremptory challenges to Diaz and Holmes; appellant fails to show any abuse of discretion on the part of the court in so finding. Furthermore, appellant fails to show the State's racially-neutral explanations given to justify these two peremptory challenges were merely a sham or were pretextural. See *Williams, supra,* at 101.

Appellant's points of error numbers twenty-five through thirty-six are overruled.[4]

In points of error numbers thirty-seven through forty-one, appellant contends that the very exercise of peremptory challenges by the State violates the Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution as well as Article I, §§ 10, 13 and 19 of the Texas Constitution and that Article 35.15,

---

4. The United States Supreme Court's decision in *Purkett v. Elem,* —— U.S. ——, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), although issued after the State and appellant filed their briefs in the present case, is squarely on point and does not change our disposition of these points of error. Appellant does not make any argument or cite

any authority to support his position that a different result would be indicated under Article I, §§ 10, 13 or 19 of the Texas Constitution, and thus his state constitution-based claims are inadequately briefed and need not be addressed. *McCambridge, supra; Dinkins, supra;* Tex.R.App. Proc. 74(f).

Texas Code of Criminal Procedure is facially unconstitutional.

■ Appellant argues, in effect, that neither the Texas nor the federal constitutions permit granting of peremptory challenges to the State and doing so resulted in appellant—and any other defendant—being tried by a jury biased in favor of the State. Appellant cites no authority to support his argument that peremptory challenges are unconstitutional per se under either the federal or Texas constitutions, and therefore nothing is presented for our review. Tex.Rule App. Proc. 74(f); *McWherter v. State,* 607 S.W.2d 531 (Tex.Cr.App.1980); *McCambridge, supra; Dinkins, supra.*

The validity of the peremptory challenge as a means to help ensure the selection of a fair and impartial jury has been recognized as constitutionally valid for many years. *Batson, supra,; Hayes v. Missouri,* 120 U.S. 68, 7 S.Ct. 350, 30 L.Ed. 578 (1887); *Whitsey v. State,* 796 S.W.2d 707 (Tex.Cr.App.1989). Appellant conveniently ignores the fact that Art. 35.15(a) provides both the State *and* the defendant, in a capital case, an equal number of peremptory challenges (fifteen).

We overrule appellant's points of error numbers thirty-seven through forty-one.

■ Appellant avers, in point of error number fifty-two, the trial court erred, in its charge to the jury in the guilt/innocence phase of the trial, in including the phrase "intent or knowledge may be inferred by acts done or words spoken." The State was required, in order to convict appellant of capital murder, to prove beyond a reasonable doubt that the murder was committed in the course of a robbery or attempted robbery. Tex.Penal Code § 19.03(a)(2).

The trial court defined robbery in its charge to the jury thusly: "A person commits a robbery if in the course of committing theft, as defined hereinafter, and with intent to obtain or maintain control of the property, he intentionally or knowingly causes bodily injury to another." Neither the State nor the appellant objected to this portion of the charge; nor did either object to the trial court's definition of "knowingly."

Appellant objected to inclusion of the phrase described above as, among other things, a comment on the evidence. Appellant's objection was overruled. Appellant also claims that the inclusion of the phrase complained of allowed the jury to impermissibly find appellant intentionally committed the murder (a required element for capital murder) based on inferences as opposed to specifically finding that appellant had a conscious desire or intent to cause the death of Mr. Turski.

The facts of the offense clearly support the jury's finding that appellant intentionally and knowingly murdered Mr. Turski in the course of committing or attempting to commit a robbery. First, he entered the station, toting a shotgun. Then, after ordering Mr. Turski to give him all the money in the cash register, he forced him into a back area and made him get down and shot him in the stomach with a shotgun blast, and after chasing him outside, appellant reloaded and shot him in the back of the head. A rational jury could find beyond a reasonable doubt from the evidence—including appellant's videotaped and written confessions—that appellant intentionally and knowingly murdered Mr. Turski. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Dunn v. State,* 721 S.W.2d 325 (Tex.Cr.App. 1986).

Assuming, arguendo, that it was error to include the complained-of words in the jury charge, the test for determining whether a jury charge error requires reversal is set forth in *Almanza v. State,* 686 S.W.2d 157 (Tex.Cr.App.1984).

"If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is 'calculated to injure the rights of the defendant,' which means no more than that there must be some harm to the accused from the error." *Almanza,* at 171. "... [T]he actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza,* at 171.

No objection was made to any other portion of the jury charge given at the guilt/innocence phase. An examination of the jury charge shows the trial court properly charged the jury on the definitions of robbery, knowingly, intentionally, reasonable doubt and capital murder. (Transcript, vol. 6, pp. 1048–1059.) The evidence of appellant's guilt—including written and videotaped confessions—is overwhelming. Accordingly, based on *Almanza,* we hold that any error in including the words in the jury charge at the guilt/innocence phase to which appellant objects is harmless beyond a reasonable doubt.

Appellant's point of error number fifty-two is overruled.

■■■ Appellant avers the trial court erred in failing to include, in its charge to the jury at the punishment phase, his requested submission on provocation. Article 37.071(b)(3) provides that the trial court shall submit the issue of provocation to the jury if raised by the evidence. "In order to raise the issue of provocation, there must be evidence of the deceased's conduct just prior to death and that evidence must be sufficient to be considered provocation." *Lucas v. State,* 791 S.W.2d 35, 65 (Tex.Cr.App.1989); *Hernandez v. State,* 643 S.W.2d 397 (Tex.Cr.App. 1982).

Appellant's own written confession states he forced Mr. Turski onto his knees in a back room after taking all the money out of the cash register. He then "panicked" and shot the clerk (in the stomach) with the shotgun. The clerk then threw a chair at appellant and ran out of the store. Appellant chased him down and, after reloading, shot Mr. Turski in the back of the head. The medical examiner testified that both shotgun wounds were capable of causing death.

There is no evidence that, prior to being shot the first time—a mortal wound—that Mr. Turski struggled with appellant or did anything other than comply with appellant's orders. While there is evidence—consisting of appellant's statement—that Mr. Turski attempted to escape after being shot the first time, he had already been mortally wounded. In any event, Mr. Turski's attempt to flee to save his life is not, given our holding in *Lucas,* evidence sufficient to raise the issue

of provocation with respect to appellant's subsequently shooting Mr. Turski in the back of the head after reloading his weapon.

Appellant's fifty-third point of error is overruled.

■■■ In points of error numbers fifty-four through fifty-six, appellant contends various errors were made by the trial court in the submission of the mitigation issue to the jury. The trial court submitted the following to the jury as Special Issue Three: "Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed."

The above language is that which is currently found in Article 37.071(e); this particular section was not in effect at the time of appellant's trial. Article 37.071 in effect at that time did not require the jury be instructed to consider mitigating evidence in assessing punishment.

The Supreme Court has held that the jury must be permitted to consider mitigating evidence. *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). Both the Supreme Court and this Court have held that where the jury was charged on the two special issues (deliberateness and future dangerousness) and the jury was specifically instructed to take into consideration, when answering those issues, all aggravating or mitigating evidence submitted during the entire trial, defendant's Eighth and Fourteenth Amendment rights were not violated. *Johnson v. Texas,* 509 U.S. 350, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993); *Lackey v. State,* 819 S.W.2d 111 (Tex. Cr.App.1989) (not error to fail to instruct jury to consider specifically appellant's age as a mitigating factor as the jury's answer as to special issue two (future dangerousness) would reflect their consideration of *all* the mitigating evidence); *Jackson v. State,* 822 S.W.2d 18 (Tex.Cr.App.1990).

The issue, however, is whether appellant's constitutional rights were violated by the trial court's submission of special issue three to the jury. Article 37.071(e), as currently in effect, was enacted, at least in part, to address *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) in which the Court found that given the unusual facts of the case, the mitigating evidence (mental retardation, abuse victim) would likely tend to promote a "yes" answer to special issue two (future dangerousness), thus turning mitigating evidence into, in effect, aggravating evidence. In *Penry,* the Court found Article 37.071 to be unconstitutional as applied because it failed to instruct adequately the jury to consider his mitigating evidence in answering the special issues.

We have held that Article 37.071 is not unconstitutional for failing to contain a provision that directs and instructs the jury's consideration of mitigating evidence presented at the punishment phase as such evidence could be given effect by the jury through the special issues submitted to them. *Gosch v. State,* 829 S.W.2d 775 (Tex.Cr.App.1991). We have also held that Article 37.071 is not unconstitutional for failing to provide standards for determining sufficiency of evidence with respect to the special issues. *Cantu v. State,* 842 S.W.2d 667 (Tex.Cr.App.1992). In *Demouchette v. State,* 731 S.W.2d 75 (Tex.Cr. App.1986) we rejected appellant's claim that Article 37.071 is unconstitutional because it does not inform the jury how to apply mitigating evidence in light of the aggravating language of the special issues.

In answering special issue number three, the jury must consider *all* the evidence they have heard during trial. Appellant's contention that the language somehow prevented the jury from consideration of constitutionally relevant evidence as mitigating circumstances, the test he must meet under *Johnson, supra,* at 306, is without merit given the very words of the language about which he complains. The cases cited above do not support appellant's claims that the state or federal constitution require the jury be in-

structed as to how to weigh mitigating evidence vis-a-vis aggravating evidence, or that the jury be instructed to consider *only* mitigation evidence when answering special issue three, or that the jury be instructed to consider or give weight to specific kinds of evidence (e.g. appellant's youth) as mitigating circumstances. Finally, appellant fails to cite any authority to sustain his position that inclusion of the word "sufficient" in special issue three unconstitutionally shifts the burden of proof with respect to mitigation to appellant, which appellant concedes in his brief.[5]

Appellant's points of error numbers fifty-four through fifty-six are overruled.

■■■ Appellant contends, in points of error fifty-seven, fifty-eight and fifty-nine, the trial court erred in the punishment phase by denying his three special requested jury instructions. Appellant submitted three requested special jury instructions regarding mitigating evidence, i.e., appellant's troubled family history, appellant's drug use and appellant's history of alcoholism. Evidence was presented at trial that appellant was physically abused by both of his stepfathers. Considerable evidence of appellant's histories of alcohol and drug abuse was also presented.

Appellant, however, did receive a *"Penry"* instruction, special issue number three, which instructed the jury to consider the character and background of appellant in determining if there were sufficient mitigating circumstances to warrant imposition of a life sentence rather than a death sentence. This instruction provided a means by which the jury could consider appellant's family history, drug use and alcoholism (and any other mitigating evidence) as mitigating circumstances. Appellant was provided more than what was required under Article 37.071 then in effect, as the language constituting special issue number three did not become part of Article 37.071 until after appellant's trial.

We have held on several occasions that the jury is given an opportunity to give full con-

---

5. It should be noted the trial court did instruct the jury that appellant's youthful age is a mitigat-

ing circumstance.

sideration to mitigation evidence raised during the trial in its consideration of the special issues. *Gunter v. State,* 858 S.W.2d 430 (Tex.Cr.App.1993); *Nobles v. State,* 843 S.W.2d 503 (Tex.Cr.App.1992); *Butler v. State,* 872 S.W.2d 227 (Tex.Cr.App.1994). Appellant was accordingly not entitled to any special instructions requiring the jury to consider appellant's drug use, alcoholism and family background as mitigating circumstances.

Appellant's points of error numbers fifty-seven, fifty-eight and fifty-nine are overruled.

 In points of error numbers sixty through sixty-five (argued collectively by appellant), appellant avers that the trial court's refusal to permit appellant to question sixteen venirepersons as to whether they could consider certain evidence as mitigating circumstances violated appellant's rights under both the Texas and United States Constitutions.

The trial court permitted appellant to ask venireperson Canup if the venireperson could consider youthful age to be a mitigating circumstance. Appellant then began to inquire of the venireperson as to whether or not the venireperson could consider other factual mitigating circumstances. The State objected. Appellant moved the Court to ask the venireperson the following four questions:

1. The law provides that voluntary intoxication which does not rise to the level of temporary insanity is a mitigating circumstance which a juror must consider. Can you consider voluntary intoxication which does not rise to the legal [sic] of temporary insanity a mitigating circumstance?

2. The law provides that a troubled family background is a mitigating circumstance which a juror must consider. Can you consider troubled family background as a mitigating circumstance?

3. The law provides that alcoholism or drug addiction is a mitigating circumstance which a juror must consider. Can you consider alcoholism or drug addiction as a mitigating circumstance?

4. Finally, the law provides that a good jail record is a mitigating circumstance which a juror must consider. Can you consider a good jail record as a mitigating circumstance?

The trial court denied appellant's motion and appellant timely objected to the court's ruling. Of the sixteen venirepersons to which appellant was denied the opportunity to ask the four questions listed above, appellant exercised peremptory challenges as to eight. Another five were excused for cause or by peremptory challenges exercised by the State. Three of the venirepersons, Kemmett, Pridgen and Young, ultimately served on the jury. Appellant cannot show any error with respect to a venireperson who was excused from the panel. *Collins v. State,* 548 S.W.2d 368 (Tex.Cr.App.1976); *Simon v. State,* 406 S.W.2d 460 (Tex.Cr.App.1966).

His claim of error thus is limited to his being prevented from examining venirepersons Kemmett, Young and Pridgen as to their feelings regarding evidence of a good jail record, voluntary intoxication, alcohol or drug addiction, and troubled family background as mitigating circumstances.

A trial court's restriction on questioning of venirepersons is reviewed under an abuse of discretion standard. *Caldwell, supra; Woolridge v. State,* 827 S.W.2d 900 (Tex.Cr.App. 1992). Questions that would require the prospective jurors to commit themselves as to how they might resolve factual issues in the case are improper. *Harkey v. State,* 785 S.W.2d 876 (Tex.App.—Austin 1990).

In *Coleman v. State,* 881 S.W.2d 344 (Tex. Cr.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 763, 130 L.Ed.2d 660 (1995), a capital case, appellant sought to ask several venirepersons as to whether they could consider appellant's troubled family history and good jail conduct as mitigating circumstances that would call for a lesser penalty. The trial court sustained the State's objection to the question as trying to commit the juror to considering that (his troubled family history) as a mitigating circumstance. *Coleman,* at 350. We held that the trial court did not abuse its discretion in refusing to allow appellant to ask questions based on facts peculiar to the case on trial. "Moreover, the venireperson said she would consider all the

evidence in answering the special issues and follow the trial court's instructions; the law does not require a veniremember to give any specified weight to a particular piece of evidence." *Coleman*, at 351. See also *Allridge v. State*, 762 S.W.2d 146, 163–64 (Tex.Cr.App. 1988), *cert. denied*, 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1988); *White, supra; Cuevas v. State*, 742 S.W.2d 331, 346 (Tex.Cr. App.1987), *cert. denied*, 485 U.S. 1015, 108 S.Ct. 1488, 99 L.Ed.2d 716 (1988).

The trial court did not abuse its discretion in denying appellant the opportunity to ask the four questions described above. Appellant did introduce evidence as to appellant's alcohol and drug problems, his family history, his jail conduct and his voluntary intoxication at trial; he was not entitled to ask venirepersons to "commit themselves" to consider such evidence as mitigating circumstances. Furthermore, appellant fails to offer any evidence venirepersons Kemmet, Pridgen and Young were objectionable or expressed any inability or unwillingness to consider *all* of the evidence in answering the special issues or any inability or unwillingness to follow the trial court's instructions. Additionally, appellant was provided opportunities to discuss appellant's youth, troubled family history, his character and alcohol/drug use as mitigating circumstances during individual voir dire and during subpanel voir dire with respect to Kemmet. Similar opportunities were provided with respect to Pridgen and Young. Appellant, assuming *arguendo* that *Coleman* is inapplicable, has not, based on the record, shown error and we are not required to accept allegations of error not supported by the record. *Beck v. State*, 573 S.W.2d 786 (Tex.Cr.App.1978).

Finally, while appellant contends he is entitled to relief under both the U.S. and Texas Constitutions, appellant fails to brief separately his state and federal constitutional arguments, and fails to offer substantive arguments and analysis for each, as required by Texas Rule of Appellate Procedure 74(f) and *McCambridge, supra*. Thus, his points of error contending a violation of the Texas Constitution are inadequately briefed and need not be addressed. *Dinkins, supra; McCambridge, supra; Goodwin, supra.*

Points of error numbers sixty through sixty-five are overruled.

■■■■ Appellant, in point of error number sixty-six, contends the trial court erred in overruling appellant's challenge for cause to venireperson Yoast. The voir dire of venireperson Yoast was extensive and covered nearly 150 pages of the record. Appellant contends venireperson Yoast was unable to distinguish between "intentional" and "deliberate." We have held that such a venireperson, unless rehabilitated, should be excused upon challenge for cause. *Martinez v. State*, 763 S.W.2d 413 (Tex.Cr.App.1988); *Felder v. State*, 758 S.W.2d 760 (Tex.Cr.App.1988).

Venireperson Yoast initially indicated some concern about deliberate versus intentional. The State, later in voir dire, asked venireperson Yoast the following two questions:

Q. [Prosecutor] . . . I discussed with you on the general voir dire portion of this trial this idea of the difference between deliberateness and intentional. Now, I'm willing to bet that before you came into this courtroom that if anybody had asked you'd have defined the two—the difference, if any, would have been slight? Is that a fair statement?

A. [Yoast] Yes.

Q. . . . We have every expectation in this trial that the term intentional conduct will, in fact, be defined for you so that will give you some starting point to proceed from. I would suggest to you that that definition is that a person who acts intentionally acts with a conscious objective or desire to cause the result. All right?

A. Okay.

Q. The key words being there, conscious objective or desire. Do you agree with me that it would be kind of pointless for the law to ask you the same question twice?

A. Yeah.

Q. Okay. Do you agree with me, then, that it certainly stands to reason that this question about deliberate conduct seems to be asking whether there is

something more than simply intentional conduct?

A. Yes.

The record shows that venireperson Yoast understood, based on his answers to the above questions, that there is a difference between intentional and deliberate conduct. On pp. 515–516, venireperson Yoast was asked an additional question on this issue.

Q. [State] Now, I've talked in terms of premeditation and I gave you an example in the general voir dire about you walking out the door and you see your boss, shake his hand. You might consider that intentional. Maybe not. Whereas you see him across the room and you decide, well, *I'm going to go* over there and shake his hand. Okay. You might consider that deliberate as opposed to intentional. Maybe not. It seems useful to think of the deliberation in terms of choosing between options, that if a person has at least put that amount of thought into it, if that amounts to a choice between various options, then *it would seem fair to* suggest that that displays or demonstrates [a] certain type of deliberation.

For example, if you've got just maybe a murder, somebody walks into the store, points a gun at you, give me your money, bam, walks out. You might consider that intentional; you might consider that deliberate. I don't know. But that's one fact scenario that you could potentially be confronted with.

You can change that a little bit and show, walk into the store, give me the money. I get the money and I step—and then put that muzzle right between your eyes and blow you away. You might consider, well, you know, we've gone a little beyond intentional here. This seems to be conduct that would—deliberately cause the death of the deceased, was committed deliberately and with a reasonable expectation that death would result.

It could be that sort of thing, and again, you don't have to give us examples. You just need to be able to understand what this concept is and deal with it. Has that been helpful in the least? Do you have questions?

A. Yes. I feel it has. Thank you.

Appellant asked venireperson Yoast several questions concerning intentional and deliberate.

Q. [Appellant] Okay. Now, in that case where you have premeditation or what we've been calling premeditation, I mean, I, I think what you did in Mr. Blake's example was use some of that premeditation to come up with what you called deliberateness. Isn't that true?

A. Possible.

Q. But if you take out that premeditation, there's just not any difference?

A. Apparently, yes.

Q. You agree with that?

A. Yes.

Appellant, after his challenge for cause to venireperson Yoast was denied, exercised his final (fifteenth) peremptory challenge and Yoast was excused.

We have held that the trial court's rulings with respect to a challenge to a venireperson must be reviewed in light of all of the answers given by the venireperson during voir dire. *Mooney v. State, supra.* We have also held that the question of whether a challenge for cause was wrongfully denied by the trial court is subject to an abuse of discretion standard. *Garcia v. State,* 887 S.W.2d 846 (Tex.Cr.App.1994); *Wheatfall, supra.*

In response to the State's voir dire questions, venireperson Yoast clearly indicated he understood "intentional" and "deliberate" were not one and the same and that the State's burden of proof on "deliberateness" went beyond its burden of proof on intent. Venireperson Yoast's responses to appellant's voir dire questions were vacillating and unclear due, perhaps in part to the confusing nature of the questions themselves. When faced with a vacillating or confused venireperson, we accord great deference to the trial judge because he—unlike us—was afforded the opportunity to observe the venireperson and to listen to his answers. *Garcia, supra; Satterwhite v. State,* 858 S.W.2d 412 (Tex.Cr. App.1993), *cert. denied,* —— U.S. ——, 114

S.Ct. 455, 126 L.Ed.2d 387 (1993); *Perillo v. State,* 758 S.W.2d 567 (Tex.Cr.App.1988):

The record, when taken as a whole, does not show the trial judge abused his discretion in his denial of appellant's challenge for cause to venireperson Yoast. Appellant's sixty-sixth point of error is overruled.

 In point of error number sixty-seven, appellant avers the trial court erred in permitting the state to conduct an in-court identification of Vargas, in the presence of the jury. During the State's case-in-chief, it called Shawn Robinson as a witness and proposed to have him identify Vargas in the jury's presence, over appellant's objection, which was overruled. Vargas was brought into the courtroom in shackles, dressed in jail clothes, and guarded by two Collin County deputy sheriffs.

In appellant's objection, he alleged the in-court identification of Vargas was prejudicial, irrelevant and unnecessary. However, appellant himself mentioned Vargas was present when he was arrested, thereby making his identification relevant and admissible under Texas Rules of Criminal Evidence 401 and 402.

Furthermore, appellant fails to cite any authority supporting his contention that the error, if any, is reversible error. Therefore, nothing is preserved for our review. *McCambridge, supra; Overton v. State,* 490 S.W.2d 556 (Tex.Cr.App.1973).

Point of error number sixty-seven is overruled.

The judgment of the trial court is affirmed.

McCORMICK, P.J., and WHITE, J., join, except as to the disposition of point of error 42.

CLINTON, J., dissents.

MALONEY, Judge, concurring.

Appellant claims his written statement is not admissible because it does not show on its face that he "knowingly, intelligently and voluntarily" waived the rights enumerated in Tex.Code Crim.Proc.Ann. art. 38.22(2)(a). The majority disagrees, holding that article 38.22's waiver requirements were met based upon certain "additional language" on the face of the statement, presumably the language set forth on pages 384–85 of the majority's opinion as appearing immediately above appellant's signature. *Majority op.* at 386. I write to clarify what that "additional language" is and how it satisfies the waiver requirement and also to emphasize the mandatory nature of the waiver requirement.

Article 38.22 provides that a statement of an accused is not admissible against him unless the statement shows that he was (1) informed of the rights listed in Subsection (a) and (2) that he knowingly, intelligently, and voluntarily waived those rights.[1] Warning and waiver are separate components. As this Court stated in *Clark v. State,* 627 S.W.2d 693, 704 (Tex.Crim.App.1982), "the sufficiency of the warnings required by *Miranda* and Art. 38.22, and the voluntariness of the waiver of the rights protected by those warnings are two distinct and separate requirements which must be met for a confession to be admissible." Further, article 38.22 explicitly requires that these two matters be shown "on the face of the statement." Al-

---

1. Article 38.22 § 2 provides in its entirety:

 **Sec. 2.** No written statement made by an accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding unless it is shown on the face of the statement that:

 (a) The accused, prior to making the statement, either received from a magistrate the warning provided in Article 15.17 of this code or received from the person to whom the statement is made a warning that:

 (1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

 (2) any statement he makes may be used as evidence against him in court;

 (3) he has the right to have a lawyer present to advise him prior to and during any questioning;

 (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

 (5) he has the right to terminate the interview at any time; and

 (b) the accused, prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived the rights set out in the warning prescribed by Subsection (a) of this section.

though specific in requiring *what* must be shown on the statement, article 38.22 does not set forth any specific requirements as to *how* a statement should reflect warning and waiver.

Appellant's statement is denoted at the top as "VOLUNTARY STATEMENT." The statement states that appellant "was duly warned and advised" of the following matters, tracking nearly verbatim the language from subsection (a):

> (1) I have the right to remain silent and not make any statement at all and any statement I make will be used against me at my trial;
>
> (2) Any statement I make will be used as evidence against me in court;
>
> (3) I have the right to have a lawyer present to advise me prior to and during questioning;
>
> (4) If I am unable to employ a lawyer, I have the right to have a lawyer appointed (without cost to me) to advise me prior to and during my questioning;
>
> (4) [sic] I have the right to terminate the interview at any time

Each of these was initialled by appellant. The statement closes with the following clause:

> I have read each page of this statement consisting of *2* pages, each page of which bears my signature, and corrections, if any bear my initials, and I certify that I have made no request for the advice or presence of a lawyer before or during any part of this statement nor at any time before it was finished did I request that this statement be stopped. I also declare that I was not told or prompted what to say in this statement.

Following this clause, the statement is signed by appellant. Under the signature line appears "Signature of person giving voluntary statement."

Appellant's initialling of each of the five matters evidences that he was informed of

them and that he read them. The placement of the warnings at the top of the page, before appellant's statement, is evidence that appellant received the warnings before making his statement. This satisfies the warning requirement of Subsection (a). Appellant's signature at the bottom of the statement evidences his approval of everything contained thereon. The final clause states that appellant did not request the advice or presence of an attorney or ask that the statement be stopped. Reading this clause in connection with the warnings at the top of the statement, it is apparent that appellant knowingly waived his rights to an attorney and to remain silent.[2] The statement is titled "Voluntary Statement" and the signature of appellant is labeled as the signature of one "giving a voluntary statement." All of these matters evidence appellant's knowing, intelligent and voluntary waiver. *See and compare Cannon v. State*, 691 S.W.2d 664, 674 (Tex.Crim.App. 1985) (statement titled "Voluntary Statement" and stating that rights were "voluntarily waiv[ed]" complied with subsection (b)). As the Court points out, the best practice would be for an express statement, in the language of article 38.22, that the accused "prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived the [above described] rights." *See Penry v. State*, 691 S.W.2d 636, 643 (Tex. Crim.App.1985) (approving last paragraph of written statement, which read "I further affirm that I knowingly, intelligently and voluntarily waived the above rights prior to and during the making of this statement."). However, a statement that does not so explicitly provide is not necessarily inadmissible. In this case, a common sense look at the statement reveals that it satisfies the requirements of article 38.22.

The majority also points out that the trial court found adequate waiver of appellant's rights on the face of the statement based upon appellant's initialling of the warnings at

---

2. Although the final clause does not state anything about the statement being used as evidence against appellant at trial, that is not a "right" to be waived. Subsection (b) requires that appellant "waive[ ] *the rights* set out in the warning prescribed by Subsection (a)." (emphasis added)

That appellant's statements can be used against him at a trial is not a "right" of appellant; rather, it is a fact that appellant should be *warned* of. Appellant's statement reflects that he was properly informed of that fact.

the top of the statement. While the majority does not disapprove of this finding, I would emphasize that initialling of the warnings *does not* evidence waiver.

With these comments, I concur in the opinion of the majority and join the judgment of the Court.

MEYERS, J., joins.

KELLER, Judge, concurring.

My understanding of appellant's claim under point of error forty-two differs somewhat from what appears to me to be the majority's understanding. The issue, as I perceive it, is not whether appellant waived the rights set out in Art. 38.22 Sec. 2(a), but whether his statement shows on its face that he did so. The directive that a statement show a waiver on its face requires a discussion of the rights listed under Sec. 2(a).

Sec. 2(b) requires waiver of the "rights set out in ... Subsection (a)." Sec. 2(a), however, designates only four of the five matters in that section as rights. Subsection (2) states: "Any statement I make may be used as evidence against me in court." Unlike the rights listed in the other subsections, which are explicitly designated as "rights," the matter listed in subsection (2) is not a right of the defendant; it is, if anything, a right belonging to the State. It is not susceptible to waiver by a defendant. For this reason, and because Sec. 2(b) specifically requires waiver only of the "rights" in Sec. 2(a), Art. 38.22 does not require a waiver associated with subsection (2).

I turn now to the question of whether appellant's statement shows on its face a waiver of the rights listed in subsections (1), (3), (4), and (5). Subsection (1) explains the right to remain silent and not make any statement at all. It also includes an admonition that any statement may be used against the defendant in court. This latter part, like that in Sec. 2(a)(2), does not identify a right susceptible to waiver by a defendant. The issue thus becomes whether appellant's statement shows on its face that he waived his "right to remain silent and not make any statement at all."

Appellant's written statement shows on its face that: (a) appellant was fully informed of the right to remain silent, (b) he acknowledged that he had this right (appellant initialed the warnings), and (c) he thereafter did not remain silent. This shows actual waiver, and it shows it on the face of the statement.[1] The conjunction of these three circumstances thus meets the requirements of Art. 38.22.

The next question is whether the statement shows on its face that appellant waived his right to have a lawyer, and to have one appointed if necessary. In his written statement, appellant declares that he "made no request for the advice or presence of a lawyer before or during any part of this statement." Since the written statement shows that appellant was informed that he had a right to a lawyer and a right to have a lawyer appointed, the above statement establishes, on the face of the statement, that appellant waived these rights.

The final question is whether the statement shows on its face that appellant waived his right to terminate the interview. The written statement shows that appellant was informed of that right. His statement includes an explicit affirmation that he did not request that the statement be stopped at any time before he was finished. This fact establishes that the requirements of Art. 38.22 were met with regard to subsection (5).

---

1. The dissent relies upon Supreme Court cases for the proposition that an accused's post-warning silence (i.e., lack of explicit waiver) combined with a confession are not enough to establish waiver. But the cases cited by the dissent deal with waiver of the right to *counsel*. The fact that a person speaks after being told that he has a right not to speak is, as a matter of common sense, directly probative of waiver of the right to remain silent, whereas the fact that a person speaks after being told that he has a right to counsel is not. Even in the area of right to counsel, though, the Supreme Court has held that, "in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979). In order to draw that inference, the Court suggests the importance of evidence of (1) an understanding by the accused of his rights and (2) a course of conduct indicating waiver. Both components exist in the present case.

In light of the foregoing, I concur in the judgment of the Court.

McCORMICK, P.J., and WHITE, J., join in the disposition of point of error 42 and otherwise join the judgment of the Court.

BAIRD, Judge, dissenting.

On original submission we held the trial judge erred in admitting appellant's written statement because it failed to meet the statutory requirements of Tex.Code Crim.Proc. Ann. art. 38.22, § 2(b). Today, the majority reverses our prior holding and now finds appellant knowingly, intelligently and voluntarily waived his art. 38.22, § 2(a) rights. I agree with Judge Overstreet that Judge Mansfield's treatment of this point is erroneous, but write separately to address Judge Keller's concurring opinion which I believe is equally erroneous.[1]

### I.

It is the duty of the judiciary to interpret the laws enacted by the Legislature. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Cr.App. 1991). When interpreting a statute we seek to effectuate the intent or purpose of the Legislature. *Ibid.* (Citing *Camacho v. State*, 765 S.W.2d 431 (Tex.Cr.App.1989)). We focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text

at the time of its enactment.[2] *Ibid.* Where the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute. *Ibid.* (Quoting *Coit v. State*, 808 S.W.2d 473, 475 (Tex.Cr.App.1991)). Only where the application of a statute's plain language would lead to an absurd result, which the Legislature could not possibly have intended, should we depart from the literal text of the statute. *Ibid.* We further presume the Legislature intended for all the statutory language to have meaning and effect. Consequently, we interpret the entire statute not just an isolated section. *Dillehey v. State*, 815 S.W.2d 623, 626 (Tex.Cr.App.1991); *and*, Tex.Gov't Code Ann. § 311.021. With this in mind, we are called upon to interpret art. 38.22, § 2.

### II.

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held: "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.*, 384 U.S. at 444, 86 S.Ct. at 1612. In response to *Miranda*, the

---

1. On original submission Judge Maloney joined the opinion of the Court which reversed the judgment of the trial court. However, he has had a change of heart and offers his concurrence to explain his present position. Today, Judge Maloney argues:

 ... The final clause states that appellant did not request the advice or presence of an attorney or ask that the statement be stopped. Reading this clause in connection with the warnings at the top of the statement, it is apparent that appellant waived his rights to an attorney and to remain silent, with knowledge as to what those rights are. *The statement is titled "Voluntary Statement" and the signature of appellant is labeled as the signature of one "giving a voluntary statement."* All of these matters evidence appellant's knowing, intelligent and voluntary waiver in compliance with Subsection (b). *See and compare Cannon v. State*, 691 S.W.2d 664, 674 (Tex.Cr.App.1985) (statement titled "Voluntary Statement" and stating that rights were "voluntarily waived" complied with subsection (b) ).

*Ante*, at 403, (Maloney, J. concurring). (Emphasis added.)

Judge Maloney's position is not supported by *Cannon*. Although in *Cannon*, we paused to note the statement was labeled "Voluntary Statement," that was *not* our reason for finding compliance with art. 38.22, § 2(b). Instead, we relied upon the fact that the statement showed, on its face, the warnings required by art. 38.22, § 2(a) and immediately thereafter was the following waiver:

 The above rights are continuing rights which can be urged by me at any stage of the proceedings, and I do hereby voluntarily waive these rights and give to the ... person to whom this statement is being made the following statement....

*Ibid. This* language evinced a compliance with art. 38.22, *not* the mere label of "Voluntary Statement." *Cannon*, 691 S.W.2d at 674. Judge Maloney intentionally misstates *Cannon* in a·feeble effort to justify his result.

2. All emphasis is supplied unless otherwise indicated.

Legislature amended art. 38.22 which provides:

> Sec. 2. *No written statement* made by an accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding *unless it is shown on the face of the statement that:*
>
> (a) the accused, prior to making the statement, either received from a magistrate the warning provided in Article 15.17 of this code or received from the person to whom the statement is made a warning that:
>
> (1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;
>
> (2) any statement he makes may be used as evidence against him in court;
>
> (3) he has the right to have a lawyer present to advise him prior to and during any questioning;
>
> (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; *and*
>
> \* \* \* \* \* \*
>
> (b) the accused, prior to and during the making of the statement, *knowingly, intelligently, and voluntarily waived the rights set out in the warning prescribed by Subsection (a) of this section.*

The statute has two procedural safeguards: first, that the accused be advised of his rights; and, second, that he knowingly, intelligently and voluntarily waive those rights. Art. 38.22, § 2(a) and (b). The statute provides that these safeguards are satisfied only if they are "*shown on the face of the statement.*" Art. 38.22, § 2. Custodial statements which do not comply with the procedures of art. 38.22 are inadmissible. *See,* art. 38.22; *and, Boyle v. State,* 820 S.W.2d 122, 130 (Tex.Cr.App.1991).

**3.** *Miranda* relied in part on *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), where the Supreme Court confronted the waiver of the constitutional right to counsel. The Court held:

## III.

Judge Keller concludes that appellant waived his *Miranda* rights because the instant statement establishes on its face that appellant was advised of his rights under art. 38.22, § 2(a). Judge Keller states:

> Appellant's written statement shows on its face that: (a) appellant was fully informed of the right to remain silent, (b) he acknowledged that he had this right (appellant initialed the warnings), and (c) he thereafter did not remain silent. This shows actual waiver, and it shows it on the face of the statement. *The conjunction of these three circumstances thus meets the requirement of Art. 38.22.*

*Ante,* at 404–405 (Keller, J. concurring). This "circumstantial" conclusion is contrary to both the plain language of the statute and United States Supreme Court precedent.

## A.

The waiver requirement of art. 38.22, § 2(b) was added in response to *Miranda* where the Court made it clear that waiver would not be presumed:

> ... [A] valid waiver *will not be presumed* simply from the silence of the accused after warnings are given or simply *from the fact that a confession was in fact eventually obtained.* A statement we made in *Carnley v. Cochran,* 369 U.S. 506, 516, 82 S.Ct. 884, 890 [8 L.Ed.2d 70] (1962), is applicable here:
>
> > Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. *Anything less is not waiver.*

*Miranda,* 384 U.S. at 475, 86 S.Ct. at 1628.[3]

As previously noted, when interpreting a statute we focus on the literal text and attempt to discern the fair, objective meaning of that text *at the time of its enactment.*

> It has been pointed out that "courts indulge every reasonable presumption *against waiver*" *of fundamental constitutional rights* and that we "do not presume acquiescence in the loss of fundamental rights."
>
> *Johnson,* 304 U.S. at 464–465, 58 S.Ct. at 1023.

*Boykin,* 818 S.W.2d at 785. The above quoted language from *Miranda* makes it clear that in 1967, when art. 38.22, § 2(b) was added, the Legislature intended that waiver would *not* be presumed.

### B.

Even if art. 38.22 permitted an inferential waiver no such waiver is present in the instant case.

#### i.

Since *Miranda,* the Supreme Court has modified its position on presuming waiver. In *North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979), the Supreme Court held that "in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." *Id.,* 441 U.S. at 373, 99 S.Ct. at 1757. However, the courts must initially presume the defendant did *not* waive his rights and the prosecution's burden is great before waiver can be inferred. *Butler,* 441 U.S. at 374, 99 S.Ct. at 1757. *See also, Watson v. State,* 762 S.W.2d 591, 601 (Tex.Cr.App.1988) (Implied waivers are clearly disfavored.).

In *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the defendant was "Mirandized" on January 19, and asserted his right to counsel and his right to remain silent. On January 20, different police officers approached the defendant, who was still incarcerated, and began a second interrogation from which a statement was obtained. At trial, the defendant's attempt to suppress the fruits of the second interrogation failed and he appealed. On appeal the Arizona Supreme Court focused on the voluntariness of the confession and held that because the defendant voluntarily confessed he had voluntarily waived his right to counsel.[4]

The United States Supreme Court reversed, holding the Arizona Supreme Court erred in determining waiver by focusing on voluntariness of the confession. The relevant inquiry is not merely whether the waiver of counsel was voluntary but also whether the waiver constituted an intelligent and knowing relinquishment or abandonment of a known right or privilege. In sum, the determination whether the statement was voluntary is separate from whether there was a voluntary, knowing and intelligent waiver. *Edwards,* 451 U.S. at 483, 101 S.Ct. at 1884.[5] For a waiver of Fifth Amendment rights to be valid, the waiver must be shown by the State to have been knowingly and intelligently made. *Ibid.* A "valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Id.,* 451 U.S. at 484, 101 S.Ct. at 1885; *and Smith v. Illinois,* 469 U.S. 91, 100, 105 S.Ct. 490, 495, 83 L.Ed.2d 488 (1984).[6]

#### ii.

The facts and circumstances surrounding the instant case demonstrate appellant did *not* knowingly, intelligently or voluntarily waive his art. 38.22, § 2(a) rights. The instant statement reads in pertinent part:

I have been duly warned and advised by ... a person who has identified himself as an officer of the Plano Police Department, that:

(1) I have the right to remain silent and not make any statement at all and any statement I make will be used against me at my trial;

(2) Any statement I make will be used as evidence against me in court;

(3) I have the right to have a lawyer present to advise me prior to and during questioning;

(4) If I am unable to employ a lawyer, I have the right to have a lawyer appointed (without cost to me) to advise me prior to and during my questioning; and

---

4. *State v. Edwards,* 122 Ariz. 206, 594 P.2d 72 (1979).

5. The Court reaffirmed this holding in *Smith v. Illinois,* 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984), stating: "Invocation and waiver are entirely distinct inquiries, and the two must not

be blurred by merging them together." *Id.,* 469 U.S. at 98, 105 S.Ct. at 494.

6. Judge Mansfield's treatment of the instant point of error is the same as the erroneous treatment of the Arizona Supreme Court in *Edwards.*

(5) I have the right to terminate the interview at any time.

\* \* \* \* \* \*

I have read each page of this statement consisting of [#'s omitted] page(s), each page of which bears my signature, and corrections, if any bear my initials, and I certify that the facts contained herein are true and correct. I further certify that I have made no request for the advice or presence of a lawyer before or during any part of this statement, nor at any time before it was finished did I request that this statement be stopped. I also declare that I was not told or prompted what to say in this statement.

Appellant's initials appear on the statement next to the art. 38.22, § 2(a) rights. At trial, the detective who interrogated appellant testified he "had [appellant] read those rights" and then told appellant "if he *understood* them I wanted him to initial them, which he did." Although the instant statement may be read to establish that appellant was notified of his art. 38.22, § 2(a) rights, nowhere on the face of the statement, or in evidence presented at trial is there any indication appellant knowingly, intelligently and voluntarily waived those rights.

Additionally, the record includes an unsigned typewritten statement prepared for appellant's signature. This unsigned statement contains the express waiver, on its face, of appellant's right to remain silent. The record does not indicate how the unsigned statement came to be prepared, whether appellant was given the opportunity to sign it, or why it was not signed by appellant. However, we may assume the Plano Police Department was aware of the need for a waiver and obviously had the wherewithal to comply with the statute, but failed to do so.

Accordingly, the instant case does not present an inferential waiver of the art. 38.22, § 2(a) rights.

## IV.

The plain language of art. 38.22 provides that in order to be admissible, a custodial statement must show on its face that the accused was advised of his art. 38.22, § 2(a)

rights *and* that he knowingly, intelligently and voluntarily waived them. Anything less renders the statement inadmissible. To interpret this statute otherwise is to ignore its plain language. Today, a majority of this Court in order to reach a palatable result is willing to presume a knowing, intelligent, and voluntary waiver of the 38.22, § 2(a) rights merely from the fact that a statement was eventually obtained. This interpretation renders art. 38.22 meaningless and contradicts *Miranda.*

With these comments, I join Judge Overstreet's dissenting opinion.

OVERSTREET, J., joins this opinion.

OVERSTREET, Judge, dissenting.

In point of error number forty-two, appellant contends that the trial court erred in admitting into evidence a written statement of the accused, because it did not meet the requirements of Texas Code of Criminal Procedure Article 38.22. Article 38.22, § 2, provides:

Sec. 2. No written statement made by an accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding unless it is shown on the face of the statement that:

(a) the accused, prior to making the statement, either received from a magistrate the warning provided in Article 15.17 of this code or received from the person to whom the statement is made a warning that:

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(b) the accused, prior to and during the making of the statement, knowingly, intel-

ligently, and voluntarily waived the rights set out in the warning prescribed by subsection (a) of this section.

The evidence at trial revealed that once arrested, appellant was taken to the Plano Police Department, where his *Miranda* warnings were read to him. Subsequently, appellant confessed both orally and in writing to the instant murder, as well as an extraneous murder.[1] At the top of the page on which appellant's written statement was contained, the following information appeared:

I have been duly warned and advised by [the detective], a person who has identified himself as an officer of the Plano Police Department, that:

(1) I have the right to remain silent and not make any statement at all and any statement I make will be used against me at my trial;

(2) Any statement I make will be used as evidence against me in court;

(3) I have the right to have a lawyer present to advise me prior to and during questioning;

(4) If I am unable to employ a lawyer, I have the right to have a lawyer appointed (*without cost to me*) *to advise me prior to* and during my questioning; and

(4) [sic] I have the right to terminate the interview at any time.

\* \* \* \* \* \*

I have read each page of this statement consisting of [number omitted] pages, each page of which bears my signature, and corrections if any bear my initials, and I certify that the facts contained herein are true and correct. I further certify that I have made no request for the advice or presence of a lawyer before or during any part of this statement, nor at any time before it was finished did I request that this statement be stopped. I also declare that I was not told or prompted what to say in this statement.

In *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Cr.App.1991), we held that when the language of a statute is clear and unambiguous, "the Legislature is *constitutionally entitled* to expect that [we] will faithfully follow the specific text that was adopted." It is only when the plain language of the statute would lead to an absurd result that we should not apply the statutory language literally. Unquestionably, the language of Article 38.22, § 2(b) is both clear and unambiguous. Consequently, in order for an accused's statement to be admitted into evidence, the police must follow the law as set out in 38.22, and ensure that evidence of waiver is on the face of the document.

After reviewing the statement in question, there is no doubt that this statement did meet all of the requirements of article 38.22, § 2(a), since the rights enumerated in § 2(a) are present on the face of the statement. The problem arises from the fact that the requirements of § 2(b) of this same article were undoubtedly not met. Article 38.22, § 2(b) mandates that the accused knowingly, intelligently, and voluntarily waive his rights, and that this waiver must be on the face of the statement in order for that statement to be admissible as evidence. Despite the majority's holding, there is no evidence on the face of this statement that appellant waived his rights. The majority suggests that we give due deference to the findings of the trial judge who overruled appellant's motion to suppress, and found that appellant's initialing of the rights, constituted a waiver of those rights. Although it is true that we generally do not disturb the factual findings of the trial judge, *White v. State*, 779 S.W.2d 809 (Tex. Cr.App.1989), in this case the judge's findings are not supported by the record. While it is true that appellant did initial each of the warnings, the majority erroneously interprets this action as a waiver of these rights. The only reasonable inference that can be drawn from this action is that appellant was made aware of his rights. This act in no way demonstrates that he also waived these rights, since there is no language of waiver

---

**1.** Appellant's oral confession was videotaped, but the tape was never admitted into evidence at trial.

present anywhere on the statement for him to initial.

Because I think that the majority failed to follow the law as it is explicitly set out in Article 38.22, I respectfully dissent for the following reasons. The majority holds that because appellant was informed of his rights, it can be *inferred* that he understood these rights. Such is not logical. Next, the majority holds that because appellant signed each page, such reinforces the inescapable conclusion that he knew, understood, and waived his rights.

Finally, the majority holds that they find § 2(b) does not require specific language of waiver to appear on a written confession but, rather requires evidence of waiver of § 2(a) rights. The majority then decides to use (for the first time) the totality of the circumstances test to determine whether appellant knowingly, intelligently, and voluntarily waived his § 2(a) rights in a manner consistent with § 2(b).

The only inescapable conclusion is that the majority goes to great length to uphold a violation of the clear, unequivocal language of a statute. The majority refuses to apply the clear language of *unless it is shown on the face of the statement*. The majority fails to point to any evidence, written or testimonial that shows conclusively that appellant understood and waived his rights. It is not enough to show that he received them. The majority suggests that it is an undue burden on law enforcement officials to provide evidence of understanding and waiver other than by inference. I offer that it is not difficult for the official taking the written statement to include in writing a provision that appellant understands and waives his rights or at least testify that appellant said he understood and waived.

In a last ditch effort the majority would have us affirm the trial court's decision of admission based on giving deference to the trial court's finding, when they themselves were based on inferences. Such a conclusion that appellant understood and waived his rights cannot be logically drawn from the record before us or the trial court. The rights are prophylactic and should be reviewed from the standpoint of protection of the citizen and not the protection of the government.

The majority refuses to recognize the legislature's express intent to protect the rights of citizens. Instead, the majority embarks on an effort to whittle away at the rights of citizens accused. I refuse to join them in this blatant effort. The state's motion for rehearing should be overruled and this Court's original decisions should be affirmed.

BAIRD, J., joins.