TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-02-00120-CR






Michael Kevin Villegas, Appellant


v.


The State of Texas, Appellee







FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT

NO. CR2001-273, HONORABLE JACK H. ROBISON, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N



 A jury convicted Michael Kevin Villegas of aggravated sexual assault. See Tex. Pen.
Code Ann. § 22.021 (West 2003). Appellant argues that, because he offered a reasonable
explanation of the evidence adduced against him at trial, the evidence presented is factually
insufficient to support a conviction. See Tex. Const. art. V, § 6. Because weighing the credibility
of witnesses and deciding between conflicting interpretations of the evidence is within the province
of the jury, we will affirm.

 Appellant only challenges the factual sufficiency of the evidence at trial, establishing 
his identity as the perpetrator of a sexual assault. Identity may be proved through circumstantial
evidence. See Earl v. State, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986); see also Roberson v. State,
16 S.W.3d 156, 167 (Tex. App.--Austin 2000, no pet.). Direct and circumstantial evidence are
equally probative for proving guilt beyond a reasonable doubt. Roberson, 16 S.W.3d at 167. Proof
by circumstantial evidence is not subjected to a more rigorous standard than other forms of evidence. 
Id.; McGee v. State, 774 S.W.2d 229, 238 (Tex. Crim. App. 1989). Thus, a court employs the same
standard when reviewing the factual sufficiency of both circumstantial and direct evidence. A
review of the factual sufficiency of evidence begins with the presumption that the evidence
supporting the conviction is legally sufficient, i.e., sufficient for the purposes of the federal
constitution. Roberson, 16 S.W.3d at 171; Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App.
1996); Stone v. State, 823 S.W.2d 375, 379 (Tex. App.--Austin 1992, pet. ref'd). As a result, a
court reviewing the factual sufficiency of evidence examines all the evidence without the legal-sufficiency prism of "in the light most favorable to the prosecution." Johnson v. State, 23 S.W.3d
1, 7 (Tex. Crim. App. 2000); Stone, 823 S.W.2d at 380-81 (criminal defendants in Texas are entitled
to extra procedural safeguard of factual-sufficiency review by court of appeals). A reviewing court,
therefore, considers all the evidence impartially, comparing evidence that tends to prove the
existence of a disputed fact or facts with evidence that tends to disprove such facts. Johnson, 23
S.W.3d at 7; Roberson, 16 S.W.3d at 171; see also Garcia v. State, 919 S.W.2d 370, 378 (Tex. Crim.
App. 1994) (reviewing court must consider all evidence that presented to fact finder, even evidence
erroneously admitted). However, because it is solely the province of the jury to reconcile evidentiary
conflicts and choose between reasonably equal theories, a reviewing court must be careful not to
substitute its judgment for the fact finder's. Clewis, 922 S.W.2d at 133 (court cannot substitute its
judgment for that of the fact finder because this would deny defendant right to trial by jury). Thus,
the proper balance between the jury's role as judge of the facts and the reviewing court's duty to
review criminal convictions is struck by allowing the reviewing court to reverse the verdict and
remand for a new trial only if the verdict is so against the great weight of evidence as to be clearly
wrong or unjust. Clewis, 922 S.W.2d at 135; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App
1997) (because first principle in conducting factual-sufficiency review is deference to jury's findings,
appellate court may not reverse jury's decision simply because it disagrees with jury, but should
exercise this jurisdiction only to prevent manifestly unjust results). Consequently, the mere
existence of alternative theories does not render evidence factually insufficient. Goodman v. State,
66 S.W.3d 283, 286-87 (Tex. Crim. App. 2001).

 In the case at bar, both parties agree that appellant's DNA was found at the scene of
the crime and on the victim's person. Wilson Young, a DNA analyst from the Texas Department
of Public Safety, testified that he analyzed DNA samples extracted from a rape kit administered to
the victim, her panties, and the comforter on which she was assaulted. The results of his tests
revealed DNA from three individuals: the victim, appellant, and a second, unidentified male. Chris
Larsen, who works for an independent DNA analysis company, testified that he analyzed a one-inch
section of cloth from the victim's panties. His analysis revealed that sperm containing DNA that
matched the appellant's was present in the cloth. 

 At trial, the State advanced the theory that appellant's attraction to the victim led him
to break into her home and sexually assault her. Testimony from both the victim's aunt and uncle
indicated that the appellant became attracted to the victim after he first met her when her aunt and
uncle purchased a waterbed from him. The victim's aunt testified that after the initial meeting,
appellant began stopping by their home uninvited. The victim's uncle testified that, at a party a few
weeks before the assault, appellant persistently asked where the victim was and if she was coming
to the party. Both the aunt and uncle testified that the appellant began stopping by their home
unexpectedly. The victim testified that she generally went to her room during the appellant's visits,
and that she did not have any substantial contact with him after their first meeting. The victim then
testified about the night of the assault. The victim testified that, on the night in question, the
assailant struck her over the back of the head as she entered her living room, pinned her down and
duct-taped her hands and feet together. The victim was only able to see that the assailant wore a
black ski mask and that the skin around his eyes was white. The assailant then taped the victim's
eyes and dragged her into the back bedroom, where she was thrown onto a bed and repeatedly
sexually assaulted. After the assailant left at around 12:45 in the morning, the victim contacted the
authorities. The authorities found DNA that matched the appellant's in the crotch of the panties the
victim put on after the sexual assault was completed, the comforter on which she was sexually
assaulted, and in saliva found on the victim's chest and breast. (1)

 The appellant then took the stand in his own defense. He conceded that the DNA
found at the scene was his. He admitted, furthermore, that he had been at the victim's house on the
night in question and that the had engaged in sexual activity with the victim. He contended,
however, that any sexual activity between he and the victim was consensual and that the sexual
assault occurred after he left. Appellant agreed that he met the victim, her aunt, and her uncle when
they responded to an ad for a waterbed he was selling. Following their first meeting, appellant
testified that he did, as the victim's aunt testified, regularly visit the victim's house. But appellant
claimed that he and the victim became increasingly close, spending time together and often engaging
in flirtatious behavior. This flirtatious relationship, appellant suggested, culminated in consensual
sexual activity on the night of the sexual assault. Appellant admitted that, on the night the victim
was assaulted, he went to the victim's house intending to have intercourse with her. Appellant
claimed that shortly after arriving at the victim's house he and the victim began engaging in
consensual sexual activity. Appellant claimed that at one point he and victim were laying on top of
one another wearing only their underwear but, when he attempted to put on a condom, the victim
became agitated. When he refused to have unprotected sex with her, appellant testified that she
ordered him to leave. Appellant suggested that the DNA samples matching his DNA profile were
deposited at the scene when he and the victim were engaging in this consensual sexual activity. 
Appellant emphasized that the DNA evidence found on the crotch of the victim's panties revealed
DNA from two males: the appellant and a second, unidentified man. Appellant conceded that he was
in the victim's house and engaged in sexual activity with the victim on the night of the assault. 
However, he contended that the assailant--this unidentified man--entered the victim's house after
the consensual sexual activity was completed and assaulted the victim. The appellant urges that the
evidence supporting his conviction is rendered factually insufficient because of the fact that there
was DNA contributed by another man found on the victim's panties. 

 The physical evidence establishes that the victim was subjected to a sexual assault.
The victim was unable to identify the man who sexually assaulted her. The State relied on both the
victim's testimony and physical evidence to establish its case. The victim testified that she did not
engage in any consensual sexual activity with the appellant on the evening of the assault. Both the
appellant's own testimony and DNA evidence showed that the appellant was in the victim's house
and engaged in sexual activity with the victim on the night of the sexual assault.

 The appellant responded by offering his theory that he and the victim did engage in
consensual sexual activity on the night in question but that after this consensual sexual activity was
complete, a second, unidentified man assaulted the victim. The jury rejected appellant's theory. It
is the jury's role to weigh the credibility of witnesses and evidence. Clewis, 922 S.W.2d at 133. The
jury is not required to credit the appellant's theory, no matter how plausible. Goodman, 66 S.W.3d
at 287. A reviewing court is not to substitute its judgment for that of the jury. Id. Because we
cannot say that the jury's determination was manifestly unjust, we affirm the conviction.



 

 Mack Kidd, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed: March 27, 2003

Do Not Publish
1. Wilson Young testified that the probability of someone other than appellant being the
donor of the stain found on the comforter was 1 in 685 billion. The probability that someone other
than the appellant was the donor of the DNA contained in the saliva found on the victim's chest 
would be the same. The probability that someone other than the appellant was a donor of DNA
found on the victim's panties was 1 in 11,300 for people of appellant's race. Finally, Young testified
that the probability that someone other than the appellant was the donor of a sample of DNA found
on the victim's breast was 1 in 27 for Caucasians.