# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00120-CR

**Michael Kevin Villegas, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT**
**NO. CR2001-273, HONORABLE JACK H. ROBISON, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted Michael Kevin Villegas of aggravated sexual assault. *See* Tex. Pen. Code Ann. ' 22.021 (West 2003). Appellant argues that, because he offered a reasonable explanation of the evidence adduced against him at trial, the evidence presented is factually insufficient to support a conviction. *See* Tex. Const. art. V, ' 6. Because weighing the credibility of witnesses and deciding between conflicting interpretations of the evidence is within the province of the jury, we will affirm.

Appellant only challenges the factual sufficiency of the evidence at trial, establishing his identity as the perpetrator of a sexual assault. Identity may be proved through circumstantial evidence. *See Earl v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986); *see also Roberson v. State*, 16 S.W.3d 156,

167 (Tex. App.CAustin 2000, no pet.).  Direct and circumstantial evidence are equally probative for proving guilt beyond a reasonable doubt.  *Roberson*, 16 S.W.3d at 167.  Proof by circumstantial evidence is not subjected to a more rigorous standard than other forms of evidence.  *Id.*; *McGee v. State*, 774 S.W.2d 229, 238 (Tex. Crim. App. 1989).  Thus, a court employs the same standard when reviewing the factual sufficiency of both circumstantial and direct evidence.  A review of the factual sufficiency of evidence begins with the presumption that the evidence supporting the conviction is legally sufficient, i.e., sufficient for the purposes of the federal constitution.  *Roberson*, 16 S.W.3d at 171; *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996); *Stone v. State*, 823 S.W.2d 375, 379 (Tex. App.CAustin 1992, pet. ref=d). As a result, a court reviewing the factual sufficiency of evidence examines all the evidence without the legal-sufficiency prism of Ain the light most favorable to the prosecution.@ *Johnson v. State,* 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); *Stone*, 823 S.W.2d at 380-81 (criminal defendants in Texas are entitled to extra procedural safeguard of factual-sufficiency review by court of appeals).  A reviewing court, therefore, considers all the evidence impartially, comparing evidence that tends to prove the existence of a disputed fact or facts with evidence that tends to disprove such facts.  *Johnson,* 23 S.W.3d at 7; *Roberson*, 16 S.W.3d at 171; *see also Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994) (reviewing court must consider all evidence that presented to fact finder, even evidence erroneously admitted).  However, because it is solely the province of the jury to reconcile evidentiary conflicts and choose between reasonably equal theories, a reviewing court must be careful not to substitute its judgment for the fact finder=s.  *Clewis*, 922 S.W.2d at 133 (court cannot substitute its judgment for that of the fact finder because this would deny defendant right to trial by jury).  Thus, the proper balance between the jury=s role as judge of the facts and

the reviewing court=s duty to review criminal convictions is struck by allowing the reviewing court to reverse the verdict and remand for a new trial only if the verdict is so against the great weight of evidence as to be clearly wrong or unjust. *Clewis*, 922 S.W.2d at 135; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App 1997) (because first principle in conducting factual-sufficiency review is deference to jury=s findings, appellate court may not reverse jury=s decision simply because it disagrees with jury, but should exercise this jurisdiction only to prevent manifestly unjust results). Consequently, the mere existence of alternative theories does not render evidence factually insufficient. *Goodman v. State*, 66 S.W.3d 283, 286-87 (Tex. Crim. App. 2001).

In the case at bar, both parties agree that appellant=s DNA was found at the scene of the crime and on the victim=s person. Wilson Young, a DNA analyst from the Texas Department of Public Safety, testified that he analyzed DNA samples extracted from a rape kit administered to the victim, her panties, and the comforter on which she was assaulted. The results of his tests revealed DNA from three individuals: the victim, appellant, and a second, unidentified male. Chris Larsen, who works for an independent DNA analysis company, testified that he analyzed a one-inch section of cloth from the victim=s panties. His analysis revealed that sperm containing DNA that matched the appellant=s was present in the cloth.

At trial, the State advanced the theory that appellant=s attraction to the victim led him to break into her home and sexually assault her. Testimony from both the victim=s aunt and uncle indicated that the appellant became attracted to the victim after he first met her when her aunt and uncle purchased a waterbed from him. The victim=s aunt testified that after the initial meeting, appellant began stopping by their

**3**

home uninvited. The victim=s uncle testified that, at a party a few weeks before the assault, appellant persistently asked where the victim was and if she was coming to the party. Both the aunt and uncle testified that the appellant began stopping by their home unexpectedly. The victim testified that she generally went to her room during the appellant=s visits, and that she did not have any substantial contact with him after their first meeting. The victim then testified about the night of the assault. The victim testified that, on the night in question, the assailant struck her over the back of the head as she entered her living room, pinned her down and duct-taped her hands and feet together. The victim was only able to see that the assailant wore a black ski mask and that the skin around his eyes was white. The assailant then taped the victim=s eyes and dragged her into the back bedroom, where she was thrown onto a bed and repeatedly sexually assaulted. After the assailant left at around 12:45 in the morning, the victim contacted the authorities. The authorities found DNA that matched the appellant=s in the crotch of the panties the victim put on after the sexual assault was completed, the comforter on which she was sexually assaulted, and in saliva found on the victim=s chest and breast.[1]

---

[1] Wilson Young testified that the probability of someone other than appellant being the donor of the stain found on the comforter was 1 in 685 billion. The probability that someone other than the appellant was the donor of the DNA contained in the saliva found on the victim=s chest would be the same. The probability that someone other than the appellant was a donor of DNA found on the victim=s panties was 1 in 11,300 for people of appellant=s race. Finally, Young testified that the probability that someone other than the appellant was the donor of a sample of DNA found on the victim=s breast was 1 in 27 for



Caucasians.

The appellant then took the stand in his own defense. He conceded that the DNA found at the scene was his. He admitted, furthermore, that he had been at the victim=s house on the night in question and that the had engaged in sexual activity with the victim. He contended, however, that any sexual activity between he and the victim was consensual and that the sexual assault occurred after he left. Appellant agreed that he met the victim, her aunt, and her uncle when they responded to an ad for a waterbed he was selling. Following their first meeting, appellant testified that he did, as the victim=s aunt testified, regularly visit the victim=s house. But appellant claimed that he and the victim became increasingly close, spending time together and often engaging in flirtatious behavior. This flirtatious relationship, appellant suggested, culminated in consensual sexual activity on the night of the sexual assault. Appellant admitted that, on the night the victim was assaulted, he went to the victim=s house intending to have intercourse with her. Appellant claimed that shortly after arriving at the victim=s house he and the victim began engaging in consensual sexual activity. Appellant claimed that at one point he and victim were laying on top of one another wearing only their underwear but, when he attempted to put on a condom, the victim became agitated. When he refused to have unprotected sex with her, appellant testified that she ordered him to leave. Appellant suggested that the DNA samples matching his DNA profile were deposited at the scene when he and the victim were engaging in this consensual sexual activity. Appellant emphasized that the DNA evidence found on the crotch of the victim=s panties revealed DNA from two males: the appellant and a second, unidentified man. Appellant conceded that he was in the victim=s house and engaged in sexual activity with the victim on the night of the assault. However, he contended that the assailantCthis unidentified manCentered the victim=s house after the consensual sexual activity was completed and

**6**

assaulted the victim. The appellant urges that the evidence supporting his conviction is rendered factually insufficient because of the fact that there was DNA contributed by another man found on the victim=s panties.

The physical evidence establishes that the victim was subjected to a sexual assault. The victim was unable to identify the man who sexually assaulted her. The State relied on both the victim=s testimony and physical evidence to establish its case. The victim testified that she did not engage in any consensual sexual activity with the appellant on the evening of the assault. Both the appellant=s own testimony and DNA evidence showed that the appellant was in the victim=s house and engaged in sexual activity with the victim on the night of the sexual assault.

The appellant responded by offering his theory that he and the victim did engage in consensual sexual activity on the night in question but that after this consensual sexual activity was complete, a second, unidentified man assaulted the victim. The jury rejected appellant=s theory. It is the jury=s role to weigh the credibility of witnesses and evidence. *Clewis*, 922 S.W.2d at 133. The jury is not required to credit the appellant=s theory, no matter how plausible. *Goodman*, 66 S.W.3d at 287. A reviewing court is not to substitute its judgment for that of the jury. *Id.* Because we cannot say that the jury=s determination was manifestly unjust, we affirm the conviction.

Mack Kidd, Justice

7

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed:   March 27, 2003

Do Not Publish